The First National Bank of Fort Worth, Texas, Plaintiff, *v.* American Exchange National Bank, Defendant.

*A draft obtained by fraud, indorsed by the person to whom it was sent and for whom it was intended, is enforcible by a* bona fide *indorsee — the indorsement is good although the indorser assumes another person's name.*

A man who falsely represented himself to be A. W. Hudson, the husband of Olive K. Hudson, made application for a loan upon property owned by Olive K. Hudson and a trust deed, as collateral security for the loan, was prepared and sent to him at an address given by him in a distant city. Shortly after-

ward a bank in the city where the property was located received a note, purporting to be signed by A. W. Hudson and Olive K. Hudson, and a trust deed signed by Olive K. Hudson, together with a letter, signed A. W. Hudson, requesting it to collect the loan and to remit the proceeds to A. W. Hudson. The mortgagee, who was not acquainted with the signature of Olive K. Hudson or that of her husband, without taking any precaution to ascertain whether the signatures to the note and trust deed were forgeries, paid the amount of the loan to the bank, which remitted a draft on another bank for the proceeds, as directed in the letter purporting to be signed by A. W. Hudson.

*Held*, that, although the signatures to the note and trust deed proved to be forgeries, the draft was enforcible in the hands of a person who, in good faith and for value, purchased it from the person purporting to be A. W. Hudson, to whom it was sent and for whom it was intended;

That the principle was applicable that if one of two innocent persons must suffer for the act of a third party, he who enabled the third party to do such act must sustain the loss.

Motion by the defendant, the American Exchange National Bank, for judgment upon the verdict of a jury rendered by direction of the court, subject to the opinion of the Appellate Division, on the 15th day of March, 1899, after a trial at the New York Trial Term.

*George H. Yeaman*, for the plaintiff.

*Michael H. Cardozo*, for the defendant.

McLaughlin, J.:

This action was brought to recover the amount of a draft drawn by the First National Bank of Denver, Col., on the defendant, payable to the order of A. W. Hudson.

The complaint alleged the execution and delivery by the drawer of the draft to A. W. Hudson, the payee; the indorsement, for value, by him to the plaintiff; acceptance by defendant; presentation for and refusal of payment, and protest for non-payment.

The answer admitted the making of the draft, acceptance, and defendant's subsequent refusal to pay. It denied the delivery to, and indorsement by, the payee, and plaintiff's ownership. It then alleged, in substance, that Lenora N. Bosworth, intending to pay to one Olive K. Hudson, the owner of certain real estate at Denver, Col., or to her husband and agent, A. W. Hudson, the sum of $2,500, purchased from the First National Bank of Denver, Col.,

the draft in suit, which, by her direction, was made payable to the order of, and mailed to, A. W. Hudson, at Fort Worth, Texas; that it was not received by him, but was received by a person known by the name of W. A. Williams, *alias* C. F. Maxan, who wrongfully and unlawfully, assuming and pretending to be A. W. Hudson, indorsed the same by forging the name of A. W. Hudson thereon, and sold the same to the plaintiff, upon such forged indorsement.

At the trial there was little or no dispute as to the facts. It there appeared that a few days prior to the 5th of February, 1897, a stranger called upon one Thomas Fitzgerald, a real estate broker in the city of Denver, Col., and inquired of him if a loan could be obtained upon certain real estate in that city, of which one Olive K. Hudson, who resided with her husband, A. W. Hudson, at Colorado — about 250 miles from Fort Worth — in the State of Texas, held the title. In answer to the inquiry, Fitzgerald said that one Lenora N. Bosworth would loan from $2,000 to $2,500. This stranger then informed Fitzgerald that the Hudsons were in or near Fort Worth, Texas, and if he would give him his card he would forward it to them and they would communicate direct in reference to the loan. A few days thereafter Fitzgerald received from Fort Worth, Texas, what purported to be a letter from A. W. Hudson — reference being there made to the card previously obtained — in which an application was made for a loan of $2,000 or $2,500 upon the real estate owned by Olive K. Hudson in the city of Denver. Considerable correspondence passed between Fitzgerald and the person signing his name A. W. Hudson, at Fort Worth, the result of which was that Mrs. Bosworth, through Fitzgerald, agreed to loan upon this real estate $2,500. A note for $2,500 and a trust deed or mortgage, as collateral security for the payment of this sum, were prepared by Fitzgerald, and by him forwarded by mail to A. W. Hudson, at Fort Worth, for execution. Shortly thereafter the First National Bank of Denver received from Fort Worth a letter signed A. W. Hudson, inclosing a note which purported to be signed by Olive K. Hudson and A. W. Hudson, and a trust deed signed by Olive K. Hudson, instructing it to notify Fitzgerald that the note and mortgage had been sent to it for collection, and to deliver the same to Mrs. Bosworth upon her paying to the bank the sum of $2,500, less Fitzgerald's commissions and the expenses incurred in examining the title,

with a request that the bank remit the proceeds, after making such deductions, to A. W. Hudson, at Fort Worth. The Denver bank, on receiving this letter, did as directed, and informed Fitzgerald that the note and mortgage had been received. Fitzgerald thereupon notified Mrs. Bosworth, who, with her attorneys and Fitzgerald, called at the bank, examined the note and mortgage, and, being satisfied with the execution of them, paid to the bank the sum of $2,500, less Fitzgerald's commissions for making the loan and the expenses incurred in examining the title, and in exchange therefor received from the bank the note and mortgage. The bank, following the instructions given in the letter above referred to, drew its draft on the defendant in this action, payable to the order of A. W. Hudson, for $2,336.90, and forwarded the same by mail to him at Fort Worth, together with a statement showing the deductions which had been made, and the draft and statement were received a few days later by the person for whom they were intended. This person then was, and for a few weeks prior thereto had been, a clerk in a hotel at that place. He was there known by the name of A. W. Hudson, and, so far as appears, that was his real name, at least it was the only name by which he was there known. He was called by that name and mail was delivered to and received by him under that name. After the receipt of the draft he showed it to one Carmichael, a lawyer of standing and well known at Fort Worth, and to the plaintiff, and requested him to go to the plaintiff bank and identify him as the payee named in the draft. This Carmichael consented to do, and he did go to the plaintiff bank and identified him as A. W. Hudson, the payee named in the draft, and thereupon the plaintiff purchased it and forwarded the same to its correspondent in New York, the Chemical National Bank, for collection. The Chemical National Bank subsequently presented the draft to the defendant and it was accepted by it, but payment was thereafter refused upon the ground that the name of the payee had been forged. It also appeared upon the trial that Olive K. Hudson, the owner of the Denver real estate, never signed the note or executed the mortgage, and that her husband, A. W. Hudson, had no knowledge of, or connection with, the transaction, until after the draft had been presented to and purchased by the plaintiff.

Upon the foregoing facts, both parties having moved for the

direction of a verdict, the trial court directed a verdict for the plaintiff subject to the opinion of the Appellate Division. (Code Civ. Proc. § 1234.)

We are satisfied that the ruling of the trial court is right. The plaintiff, in good faith and for value, purchased the draft from *the person* to whom it was sent, and for whom it was intended, and it thereby acquired a good title. The fact that Mrs. Bosworth had, by a trick or device, been induced to part with her money for a worthless note and mortgage does not in the least affect the question. Suppose Hudson, instead of operating through the Denver bank, had gone to Denver and had there met at the bank Fitzgerald, Mrs. Bosworth and her attorneys, and he had there personally produced the note and mortgage, and Mrs. Bosworth, in exchange for them, had given him her check on the Denver bank, which he then and there had presented to the bank for payment and the same had been paid, would not the bank be protected? Manifestly, because it would have acquired the title to the check from *the person* to whom Mrs. Bosworth delivered it and to whom she intended to give the title. It is unquestionably true, as contended by the defendant's counsel, that Mrs. Bosworth supposed she was dealing with the husband of Olive K. Hudson, but this does not alter the fact that she, in exchange for the note and mortgage, gave her money to the bank, which the bank intended to, and did, remit, by the draft in suit, to *the person* at Fort Worth calling himself A. W. Hudson. That person received it and transferred it to this plaintiff, who, as I have already said, received it in good faith and for value, and it thereby acquired good title. (*Robertson v. Coleman,* 141 Mass. 219; *Forbes & King* v. *Espy, Heidelbach & Co.,* 21 Ohio St. 474.)

The indorsement was not forged. On the contrary, it was indorsed by *the person* in whose favor it was drawn. Nor was the Denver bank deceived in any way. It delivered the note and trust deed to Mrs. Bosworth, received her money and drew and sent, as directed, the draft to the identical person who indorsed it. No deception was practiced upon the bank. It was not cheated or defrauded in any way. It is true, Mrs. Bosworth was defrauded into making a loan upon a worthless mortgage and note, but that

was her own fault and not this plaintiff's. The draft was not made by her or drawn at her request. She had nothing whatever to do with this, except to make it possible by accepting the note and mortgage. Had she exercised the care which good business judgment would seem to have dictated in ascertaining the validity of the signatures on the note and mortgage, she would undoubtedly have discovered the fraud before she parted with her money. She, however, so far as appears, took no precaution whatever, apparently assuming that A. W. Hudson, of Fort Worth, was the husband of Olive K. Hudson, and that he had a right to represent and do business for her.

In principle, this case is much like *Robertson* v. *Coleman* (*supra*). There, a person went to a hotel in the city of Boston and registered under the name of Charles Barney, and on the day he arrived, or the day following, he took to the place of business of the defendant — who sold property as an auctioneer — a horse and carriage, of which he represented himself to be the owner, and which he requested the defendant to sell for him. He gave his name as Charles Barney. The defendant there, believing him to be the person by that name who lived at Swanzey, sold the horse and carriage and gave him a check in payment. The check was made payable to Charles Barney. The person to whom it was delivered indorsed it under that name, delivered it to the hotelkeeper in payment of his hotel bill, and received the balance in cash. Shortly thereafter the defendant ascertained that the horse and carriage had been stolen, and the bank, by his direction, refused to pay the check. There it was made to appear that Charles Barney was not the true name of the person who received the check, and that he had never gone by that name before registering at the hotel. In an action to recover the amount of the check, the court held : " That although the defendants may have been mistaken in the sort of man the person they dealt with was, this person was the person intended by them as the payee of the check, designated by the name he was called in the transaction, and that his indorsement of it was the indorsement of the payee of the check, by that name. The contract of the defendants was to pay the amount of the check to this person, or his order, and he has ordered it paid to the plaintiff. If this person obtained the check from the defendants by fraudulent repre-

sentations, the plaintiff took it in good faith and for value." (See, also, *Am. Exc. Bank* v. *City Bank*, 5 N. Y. Leg. Obs. 18; *Merchants' Loan & Trust Co.* v. *Bank of the Metropolis*, 7 Daly, 137.)

It is well settled that if one of two innocent parties must suffer, by the act of a third, he who enables the third party to do what he did must sustain the loss. (*Rawls* v. *Deshler*, 4 Abb. Ct. App. Dec. 12; *Mc Williams* v. *Mason*, 31 N. Y. 294.) We think this principle is applicable here. Mrs. Bosworth, without knowing the signature of either Olive K. Hudson or that of her husband, without making any examination or taking any precaution to ascertain whether the signatures to the note and mortgage were forgeries, paid to the bank the amount of money called for, and the bank did just what it was obliged to do — forward to the person who sent the note and mortgage to it, a draft payable, as directed, to the order of that person — A. W. Hudson. That person received it; that person indorsed it, and upon that indorsement it was acquired by the plaintiff for value, and it did not thereafter lie in the power of Mrs. Bosworth, the Denver bank, or any one else to prevent the plaintiff from realizing upon it.

In reaching this conclusion, the authorities cited by defendant's counsel have not escaped our attention. They have been considered, but they do not seem to be in point. They relate mostly to forged indorsements or to the liability of common carriers.

It follows that judgment for plaintiff must be ordered upon the verdict, with costs.

VAN BRUNT, P. J., BARRETT, PATTERSON and O'BRIEN, JJ., concurred.

Judgment ordered for plaintiff on verdict, with costs.