FIDELITY AND CASUALTY · COMPANY OF NEW YORK, Respondent, v. FARMERS NATIONAL BANK OF HUDSON, NEW YORK, Appellant.

196

Argued May 27, 1937; decided July 13, 1937.

*Robert E. Whalen* and *William C. Hawver* for appellant. The Appellate Division misconstrued and misapplied the provisions of sections 73 and 153 of the charter (L. 1921, ch. 669), which prescribe the procedure to be followed in paying drafts drawn upon the city treasurer. (*Ætna Nat. Bk.* v. *Fourth Nat. Bk*, 46 N. Y. 82; *Goodwin* v. *American Nat. Bank*, 48 Conn. 550; *Newburyport* v. *Spear*, 204 Mass. 146.) Issuance of certificates of deposit to the treasurer involved no breach of the depository contract. (*Allen* v. *Puritan Trust Co.*, 211 Mass. 409; *Clarke* v. *Pub. Nat. Bk. & Tr. Co.*, 259 N. Y. 285; *Sagone* v. *Mackey*, 225 N. Y. 594; *Whiting* v. *Hudson Tr. Co.*, 234 N. Y. 394; *Empire Tr. Co.* v. *Cahan*, 274 U. S. 473; *United States Fid. & Guar. Co.* v. *Metropolitan Nat. Bank*, 1 Fed. Supp. 514; *Poorman* v. *Woodward*, 21 How. 266; *Peoples Bank* v. *Int. Fin. Corp.*, 30 Fed. Rep. [2d] 46; *People* v. *Merchants Tr. Co.*, 116 App. Div. 41; 187 N. Y. 293; *Casey* v. *Kastel*, 237 N. Y. 305; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.) The city could not have recovered, nor can plaintiff as its assignee or sub-rogee recover, for moneys abstracted by the treasurer from the cemetery commission accounts. (*United States*

*Fid. & Guar. Co.* v. *Metropolitan Nat. Bank,* 1 Fed. Supp. 514; *People* v. *Fields,* 58 N. Y. 491; *Gunnison* v. *Bd. of Education,* 176 N. Y. 11.) The city's failure to comply with sections 75 and 151 of its charter estops it, and plaintiff as its assignee, from recovering herein. (*Owings* v. *Speed,* 5 Wheat. 420; *Handley* v. *Stutz,* 139 U. S. 417; *Moss* v. *Averell,* 10 N. Y. 449; *Power* v. *Village of Athens,* 99 N. Y. 592; *Jackson* v. *Miller,* 6 Cow. 751; *Matter of Loughran* v. *Markle,* 242 App. Div. 331; 266 N. Y. 601; *Larkin* v. *Nassau El. R. R. Co.,* 205 N. Y. 267; *Vandeweghe* v. *City of New York,* 150 Misc. Rep. 815; 242 App. Div. 762; *Critten* v. *Chemical Nat. Bk.,* 171 N. Y. 219; *National Surety Co.* v. *Manhattan Co.,* 252 N. Y. 247; *Potts & Co.* v. *Lafayette Nat. Bk.,* 269 N. Y. 181; *Empire Trust Co.* v. *Cahan,* 274 U. S. 473.) The bank had neither actual knowledge nor constructive notice of the treasurer's defalcations, nor did it participate therein to its direct benefit. (*Rodgers* v. *Bankers Nat. Bank,* 179 Minn. 197; *Clarke* v. *Public Nat. Bk. & Tr. Co.,* 259 N. Y. 285; *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Cheever* v. *Pittsburgh R. R. Co.,* 150 N. Y. 59; *American Surety Co.* v. *Waggoner Nat. Bk.,* 83 Fed. Rep. [2d] 99; *Potts & Co.* v. *Lafayette Nat. Bk.,* 269 N. Y. 181; *United States Fid. & Guar. Co.* v. *Metropolitan Nat. Bank,* 1 Fed. Supp. 514; *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Oelbermann* v. *National City Bank,* 79 Fed. Rep. [2d] 534; 298 U. S. 638; *Bank of Vass* v. *Arkenburgh,* 55 Fed. Rep. [2d] 130.) The judgment upon the Appellate Division's order mulcts defendant for interest in amounts far beyond what, if anything, would be recoverable. (*Cragie* v. *Hadley,* 99 N. Y. 131; *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Howell* v. *Adams,* 68 N. Y. 314; *Bank of British North America* v. *Merchants Nat. Bk.,* 91 N. Y. 106; *Cottle* v. *Marine Bank,* 166 N. Y. 53; *Kaufman* v. *Tredway,* 195 U. S. 271; *Sickles* v. *Herold,* 149 N. Y. 332; *Lewine* v. *National City Bank,* 222 App. Div. 74; 248 N. Y. 365; *Tuzzeo* v. *American Bonding Co.,* 226 N. Y. 171; *Miller* v. *Robertson,* 266 U. S. 243.)

*Charles B. Sullivan* and *Warner M. Bouck* for respondent. Defendant wrongfully permitted the treasurer to withdraw moneys to his own use from cemetery accounts. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Seaboard Nat. Bank* v. *Bank of America,* 193 N. Y. 26; *Shoe Lasting Machine Co.* v. *Western Nat. Bank,* 70 App. Div. 588; *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.,* 226 N. Y. 225; *State* v. *Citizens Nat. Bank,* 91 Ind. App. 106.) The duty owed by the bank to the city respecting the custody of city funds was not only the duty owed generally by a depository bank to the *cestui que* trust of a private trust, but also the duty arising under its express contract with a city by reason of its designation as a statutory depository. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.,* 226 N. Y. 225; *Holden* v. *New York & Erie Bank,* 72 N. Y. 286; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409; *Mitchell* v. *First Nat. Bank,* 203 Ky. 770; *Underwood, Ltd.,* v. *Bank of Liverpool,* [1924] 1 K. B. 775.) Defendant could not assume that the treasurer had authority to " transfer funds from one account to another," when he was transferring funds, which the bank knew were required to be held by the city, in the " perpetual care trust " to the general fund account. (*Holden* v. *New York & Erie Bank,* 72 N. Y. 286; *Clark* v. *Sheldon,* 134 N. Y. 333; *Cincinnati* v. *Roettinger,* 105 Ohio St. 145; *Leffingwell* v. *Scutt,* 221 App. Div. 462.) The Appellate Division properly held that no estoppel arose by reason of any failure upon the part of the Common Council or other city officials to take steps to discover the peculations. (*Gilliland* v. *Lincoln Alliance Bank & Tr. Co.,* 145 Misc. Rep. 827; 239 App. Div. 68; 264 N. Y. 517; *Village of Fort Edward* v. *Fish,* 156 N. Y. 363; *County of Erie* v. *Town of Tonawanda,* 95 Misc. Rep. 663; 176 App. Div. 942; *People* v. *Santa Clara Lumber Co.,* 213 N. Y. 61; *Wells* v. *Johnston,* 171 N. Y. 324; *Litchfield* v. *Bond,* 186 N. Y. 66; *Ontario Knitting Co.* v. *State,* 205 N. Y. 409; *Filor* v. *United States,* 9 Wall. 45; *Board of Supervisors* v.

*Ellis*, 59 N. Y. 620; *Wagner Trading Co.* v. *B. P. Nat. Bank*, 228 N. Y. 37; *Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Benedict* v. *Arnoux*, 154 N. Y. 715.) Interest was properly allowed as damages on the amount of each item from the date of conversion. (*Ferris* v. *Hard*, 135 N. Y. 354; *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244; *Holden* v. *New York & Erie Bank*, 72 N. Y. 286; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37.)

RIPPEY, J.   Plaintiff in this action was a surety on the official bonds of Charles J. West, City Treasurer of the city of Hudson, New York, covering four of his terms of office as City Treasurer, which began on January 1, 1923, and expired December 31, 1931.   During that period until April 30, 1930, defendant was the duly designated depository of the funds belonging to the city.   Between the dates mentioned, West misappropriated moneys which belonged to the city and came into his hands as City Treasurer in excess of $211,183.93, for which the city was not reimbursed by West.   On November 11, 1932, plaintiff, by reason of its liabilities on its bonds, paid to the city on account of such misappropriation the sum above mentioned, and thereupon, by subrogation and through assignment by the city, became owner of whatever claim the city had for reimbursement for the misappropriated funds.   It brought this action to recover $73,342.86, with interest from defendant, the same being a part of the misappropriations.   The case was tried before a court without a jury, and upon findings of fact the complaint was dismissed. The Appellate Division reversed the judgment dismissing the complaint, reversed and modified certain findings of the trial judge, made new findings and awarded plaintiff judgment for $58,415.51, which with interest and costs amounted to $92,335.27, and it is from that judgment that defendant appeals to this court.   From the record it appears that the findings of fact made or approved by the Appellate Division are sustained by the evidence.

Defendant was selected after competitive bidding as depository of the public moneys of the city for a term of three years commencing May 1, 1923, from among the banking houses of the city which, pursuant to the provisions of section 152 of the city charter (Laws of 1921, ch. 669) were required to file sealed proposals, it being determined by the Common Council that defendant's bid was the most advantageous to the city. In its proposal the charter provided that it should state the rate of interest which it would pay to the city on the total daily balances standing to the credit of the city After selection and notification of its selection and before it could receive any moneys belonging to the city, defendant was required by section 153 of the city charter to execute, acknowledge and deliver to the City Clerk a bond running to the city and " conditioned that such depository shall faithfully keep such deposits, and shall on the last day of each month pay and account for the interest on such daily balances, at the rate in such accepted proposals stated, and shall faithfully pay all such orders as shall be drawn upon the treasurer of the city, and shall pay the same only on the order of the officials du y authorized, and at the end of the term wil faithfully pay over to its or their successor all moneys that shal remain in its or their hands belonging to the city." Defendant's bond was executed on April 30 1923, and contained the following condition: ' The condition of th s obligation is such that if the principal shall during the term of this bond faithfully account for and pay on legal demand all moneys deposited with it by or on behalf of the said obligee, and shall not suspend payment during the term hereof, and shall faithfully keep ˙ such deposits, and shall on the last day of each month pay and account for the interest on such daily balances, at the rate of 3.86 per cent, and shall faithfully pay all such orders as shall be drawn upon the Treasurer of the City, and shall pay the same only on the order of the officials duly authorized, and at the end of the term will faithfully pay over to its or

their successors all moneys that shall remain in its or their hands belonging to the City, this obligation shall be null and void." After similar procedure defendant was designated for the three-year term commencing May 1, 1926, and again for the three-year term commencing May 1, 1929, as city depository, and filed other bonds containing the same condition, except that it agreed to pay interest at the rate of 4.05 per cent. Section 70 of the charter provides that the City Treasurer shall be the custodian of all the moneys and property which the city may by any means receive. By section 71 of the city charter, the City Treasurer was required to deposit all moneys held by him as such City Treasurer in the designated depository. Under section 74 of the charter the City Treasurer was required to receive all funds given or bequeathed to the city to be used in the care and maintenance of cemetery lots or in the general care of the cemeteries of the city, and by sections 317 and 318 he was custodian of all moneys arising from the operations of the Commission of Cemeteries.

Section 73 of the city charter provides fully and in detail as to how sums may be paid out. That section provides that the Treasurer " shall pay out said moneys only upon drafts signed by the mayor and countersigned by the city clerk to pay audits and allowances by the common council, and by the officer or by the president of any board or commission entitled to draw the same and countersigned by its secretary. * * * The city treasurer shall prepare and furnish to the mayor and each officer, commission or board, who shall have money on deposit with him, uniform form of draft to be used by each of the same for the purposes herein provided, and no officer, commission or board shall use any other form of draft for the purpose of drawing funds from the city treasury." There is further provision that the drafts shall be numbered consecutively with stubs to be bound in book form upon which the date, amount and purpose of the draft and the name of the payee are required to be

inserted. These requirements appear to have been complied with by the Treasurer except in cases where he misappropriated city funds. These provisions as to payment of money by the City Treasurer were mandatory; it was provided that no draft should be paid unless it contained the information, signatures and auditing required.

Misappropriation of moneys belonging to the city through transactions with the defendant affected five accounts maintained in the bank by the City Treasurer: (1) General fund account; (2) perpetual care trust, cemetery, account No. 3103; (3) cemetery maintenance trust, account No. 3104; (4) interest, cemetery, account No. 3105, and (5) interest accrued, perpetual care, account No. 3106, all of which were continuous running accounts.

$37,776.93 was withdrawn from accounts 2 to 5 above between December 11, 1925, and May 2, 1930, inclusive, by means of seventeen checks, none of which contained the signature or countersignature of any city official other than West. The form of drafts required by section 73 of the charter was not used. The items were either paid in cash or drafts were issued to fictitious persons or transfers were made to West's personal account. The last dollar contained in each of those four cemetery accounts was withdrawn by West on May 2, 1930. There was no record on the City Treasurer's books of the withdrawal of any of the items.

$20,383.51 of the amount awarded plaintiff constituted city moneys collected by West but not deposited in any account with defendant as required by the city charter. The total was made up of some forty-four items ranging from $20 as the lowest to $2,782 as the highest, and the amounts were diverted between February 8, 1924, and September 11, 1929. Each of these items was collected by West and taken to defendant's bank, which received it and issued to West a certificate of deposit. Each certificate of deposit was cashed shortly after its issuance. The proceeds of a portion of the certificates

found their way into West's personal account with the bank, but the cash paid for many could not be traced. By the methods indicated West was able to convert taxpayers' checks, payable to the City Treasurer, into certificates of deposit which could be cashed without records of the conversions appearing in the city accounts which were carried by the bank. The balance of the amount recovered represents interest of $255.80 which the city should have received if the above-mentioned non-interest-bearing certificates of deposit had not been issued and the moneys represented by them had been deposited as required by the charter in the city's accounts.

Attention has been called above to the proposal made by the bank to become depository for the city funds, the acceptance of the proposal by the city, the bond given by the defendant and the applicable provisions of the charter of the city of Hudson. Those constituted the contract between the defendant and the city. As to all deposits, the relation of debtor and creditor existed and the bank could relieve itself from liability for not retaining the deposit and for not protecting the city from its loss only by payment upon the actual direction of the depositor (*Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26), in the form required by the contract. A check drawn upon the account, though signed by the City Treasurer, did not authorize payment by the bank. Defendant failed faithfully to keep deposits of city money or to pay out moneys in its hands on orders in the form required by the provision of the charter, in violation of the express terms of its contract. It was also bound to receive for deposit moneys delivered to it by the City Treasurer and to pay interest thereon, but the payment of interest was avoided by the issuance of non-interest-bearing certificates of deposit. Of course, the contract did not require the bank to follow through and investigate the purposes of and know that each expenditure made by the City Treasurer was for the account of the city and legitimate. But it was bound by its contract to know that the Treasurer was

authorized to pay out the city's moneys on deposit with it only on orders signed and countersigned by the required officers and in the form required by the contract. The City Treasurer was authorized under section 318 of the charter to convert certain of the funds in certain of the cemetery accounts arising out of the sales of lots into securities. The bank could not be required to see that withdrawn funds were used for that purpose. But withdrawal from those accounts, nevertheless, could only be upon the " uniform form of draft " when " signed by the mayor and countersigned by the city clerk " and by the president of the Cemetery Commission and countersigned by its secretary. (Charter, § 73.) The income from the securities purchased, if any, was required to be deposited in the specifically earmarked accounts Nos. 4 and 5, above mentioned. But deposits of such income were made in other accounts, contrary to the terms of the contract.

A form of draft to meet the requirements of section 73 of the charter was adopted by the city before the contract with the depository was made. Drafts drawn on this form were used by the city during the period of the misappropriations and were paid by defendant when signed by the Treasurer and signed and countersigned by other city officials as required for legitimate city expenditures. The rule is well established that checks or drafts drawn upon accounts in the bank without being in the required form or having the required authorization must be deemed " incomplete and improperly drawn " where the bank knew or ought to have known, prior to the payment, of the required form and necessary signatures. Payment by the bank upon such incomplete and improperly drawn checks without inquiry as to their authenticity leaves it without defense for diversion of the funds when inquiry or knowledge would have prevented the loss. (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225.) Such an irregular proceeding as the issuance to West of certificates of deposit for ordinary receipts of moneys belonging to the city and the subsequent cashing of such

certificates or transferring the proceeds thereof and of other city moneys to West's personal account definitely charged the bank with knowledge that such city funds were not being used for city purposes. When it received those moneys for which it issued certificates of deposit, it had notice that they belonged to the city and it then rested under the duty of seeing that they were placed in the city's deposit accounts. By permitting West to make the withdrawals from the several accounts in the manner indicated and to apply the city's moneys to his own use by way of certificates of deposit and otherwise as stated, the bank aided and abetted the thief in stealing the funds. It is not material that it did not knowingly participate in the theft. Its neglect of duty left the thief in position to steal and aided the misappropriation. (Cf. *Potts & Co.* v. *Lafayette Nat. Bank*, 269 N. Y. 181, 186.) It is claimed that the mere fact alone that the City Treasurer deposited the funds of the city in his own account or withdrew them in cash at infrequent or at isolated intervals might not charge the bank with liability for the diversion. (*Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285.) But that is not this case and we do not decide whether such a rule would apply to the acts of a public official. Here actual knowledge of the irregular methods and general practice adopted by the Treasurer to secure the funds by withdrawal, its violation of its contractual obligations to the city as above indicated and its participation in the diversion through the acquisition of the advantage of not being required to pay interest on moneys for which it issued non-interest-bearing certificates of deposit render the bank liable for the loss. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.) There was adequate notice to the bank from all the circumstances which reasonably supported the inference that misappropriation was intended by the Treasurer. Violation of its contract with the city was in aid of the conversion.

Appellant insists that the plaintiff is estopped to assert its claim here through the failure of the city to comply with sections 75 and 151 of the city charter. That defense was pleaded. Even were such a defense available to the defendant, the Appellate Division has found upon proof sufficient to sustain its finding that the defendant had failed to establish any such defense. Section 75 of the charter requires the Treasurer to make a summary report to the Common Council at each monthly meeting thereof of all of his receipts or disbursements had or made subsequent to his last report and on what account and from what funds the same is chargeable or has been drawn against by the several officers, commissions or boards entitled to draw against the same, that each such report should be published once each month in the official papers and that on the 30th day of April in each year he shall file with the City Clerk, who shall present the same to the Common Council, an itemized account of his receipts and disbursements since his last annual report, and a statement of the financial condition of the city, the latter to be published once annually in the official newspapers. Section 151 of the charter makes the Common Council the board of auditors to examine the accounts with directions that they shall have the same powers and shall proceed in the same manner as prescribed by law for boards of town auditors in towns. The City Clerk, who took office February, 1932, testified that |although he had made a search for the audits during the period from May 1, 1923, to May 30, 1930, he had been unable to find any. Section 75 of the charter requires the reports of the Treasurer when examined and certified as correct by the Common Council, together with the vouchers relating thereto, to be filed by the City Clerk and to be by him preserved as a part of the city records for at least six years. In November, 1931, George A. Bold, an Examiner of Municipal Accounts for the State of New York, made an examination of the office of the Treasurer of the city of Hudson covering

the period from January 1, 1920, to November 30, 1931. He testified that there were no records in the City Treasurer's office with reference to the manipulation and payment of moneys by way of the certificates of deposit referred to or of the withdrawal of moneys from city funds by West for his own personal account. What information he got was derived principally from defendant and other sources. It is difficult to see what an audit such as is required by section 151 of the charter would have indicated with reference to the City Treasurer's peculations. West could not be expected to leave any record or make any report which would incriminate himself. At any rate, defendant failed to show notice to the city of the defalcations of the Treasurer by way of Treasurer's reports, council audits or otherwise, and the lower courts have found that the city had no knowledge of the misappropriations or of the irregular transactions of West prior to November, 1931. Without knowledge or intimation that there was anything wrong with West or with his accounts, the city cannot be chargeable with acquiescence in the transactions of the City Treasurer, and the plaintiff, as subrogee and assignee, is not estopped to assert its claim through failure of other city officials to discover the misappropriations. Beyond that, the defendant failed to disclose to the city officials the methods by which West was handling the accounts or to disclose to them any of his irregular transactions. This is an action on contract, not in tort, and the defendant aided the wrongful act of the Treasurer. We know of no authority which holds that a wrongdoer may take advantage of his own wrongdoing to avoid a contract liability.

Appellant also claims that it should be chargeable with interest only from the date of the commencement of the action. On April 30, 1930, another bank succeeded defendant as city depository. Up to that date defendant was obligated to pay out moneys in its hands only on

the order and demand of the city. Defendant covenanted to turn over all moneys in its hands to its successor upon the appointment of the new depository. It did not turn over the moneys misappropriated by West, of course, because they were gone. But they were gone because of the failure of defendant to keep its covenant with the city to " faithfully keep such deposits " until the city should demand release of the funds in the form required by the contract. It covenanted to pay and account for interest on daily balances on the last day of each month. Defendant, being a wrongdoer, will be deemed to have had on hand on the date its successor was appointed the principal funds misappropriated with interest at the rate specified in the contract. (*Holden* v. *New York & Erie Bank*, 72 N. Y. 286.) Defendant also agreed to " faithfully pay over to its or their successors all moneys that shall remain in its or their. hands belonging to the city." Interest at the legal rate of six per cent was properly chargeable on the misappropriated funds and accrued interest at the contract rates from May 1, 1930. (*Board of Supervisors of Monroe County* v. *Clark*, 92 N. Y. 391, 397.)

The judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgment affirmed.