MARYLAND CASUALTY COMPANY, Appellant, *v.* CENTRAL TRUST COMPANY, Respondent.

UNITED STATES OF AMERICA on Relation of MARYLAND CASUALTY COMPANY, Appellant, *v.* CENTRAL TRUST COMPANY, Respondent.

Argued January 9, 1948; decided April 22, 1948.

*Ruben A. Dankoff* for appellants. I. Section 326 of the Negotiable Instruments Law is not applicable to the facts of the instant case. (*Shattuck* v. *Guardian Trust Co.*, 204 N. Y. 200; *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.*, 244 App. Div. 404; *Kleinman* v. *Chase Nat. Bank*, 124 Misc. 173.) II. The alleged negligence of the " depositor " in failing to obtain and examine the cancelled vouchers is no defense in these actions. III. Estoppel by carelessness, as a defense, is inapplicable to these actions. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *American Surety Co.* v. *Empire Trust Co.*, 262 N. Y. 181.) IV. The defense of " account stated " is inapplicable. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247.) V. The alleged negligence of the referee in bankruptcy is in no way binding upon the plaintiffs. (*Morgan* v. *United States Mtge. & Trust Co.*, 208 N. Y. 218.) VI. None of the alleged defenses are applicable in an action for breach of the depository's bond to the United States of America. VII. Defendant's obligation to the creditors of the bankrupt cannot be avoided by the assertion of any of the defenses. (*Fidelity & Cas. Co.* v. *Farmers Nat. Bank*, 275 N. Y. 194; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *American Nat. Bank* v. *Fidelity & Deposit Co.*, 129 Ga. 126.) VIII. Under any circumstances, plaintiff must recover judgment for the proceeds of the first four forged checks.

*J. Paul Brennan* for respondent. I. The trial court erroneously concluded that the trustee in bankruptcy was the depositor within the meaning of section 326 of the Negotiable Instruments Law, and, based upon that error, denied to the defendant bank the protection of section 326, to which the bank was entitled. (*Gardner* v. *Chicago Tit. Co.*, 261 U. S. 453; *Shattuck* v. *Guardian Trust Co.*, 145 App. Div. 734, 204 N. Y. 200; *American Surety Co.* v. *Cortland Sav. & Banking Co.*, 143 Ohio St. 353; *Florida Bank & Trust Co.* v. *Union Ind.*

*Co.,* 55 F. 2d 640; *Phoenix Bank* v. *Risley,* 111 U. S. 125; *Baldwin's Bank* v. *Smith,* 215 N. Y. 76.) II. The depositor through its representative, the referee in bankruptcy, was negligent in failing promptly to obtain vouchers, keep records, require reports from the trustee, examine vouchers after return and in his complete failure to supervise the actions of the trustee. (*Leather Manufacturers Bank* v. *Morgan,* 117 U. S. 96; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219.) III. The remaining defenses, viz., failure to depositor to make timely discovery of the first forgery and account stated and estoppel were established by the evidence. (*Potts & Co.* v. *Lafayette Nat. Bank,* 269 N. Y. 181; *Hammerschlag Mfg. Co.* v. *Importers' & Traders Nat. Bank,* 262 F. 266; *National Surety Co.* v. *Manhattan Co.,* 252 N. Y. 247.)

CONWAY, J. In 1937, there was referred to one Sanford, Referee in Bankruptcy for Monroe and Wayne Counties, New York, the Matter of Van Vechten Milling Co., Inc., an adjudicated bankrupt. Thereafter one Haidt was appointed trustee. He qualified and filed a bond of the plaintiff company conditioned upon his accounting for all moneys and assets of the estate and the faithful performance of his official duties. He opened an account in the Central Trust Company, the defendant herein, selecting it from the four designated depositories for bankruptcy estate funds in Rochester. Through sales of the bankrupt's property he deposited upwards of $16,000 in that account. It was specifically conceded during the trial that such deposit could be lawfully withdrawn only by check or draft signed by the clerk of the District Court or by Haidt as trustee and countersigned by a judge of said court, or by a referee designated by the court or by the clerk or his assistant when properly authorized. That was by reason of number 29 of the General Orders in Bankruptcy (298 U. S. 695, 697, and the amendments in 305 U. S. 681, 695). The consent of the defendant to become one of the designated depositories, the acceptance of the account of Haidt as trustee and the applicable provisions of General Order No. 29 constituted the contract between the defendant and its depositor. (*Fidelity & Cas. Co.* v. *Farmers Nat. Bank,* 275 N. Y. 194.) The defendant kept on file a sample original signature of **Sanford**

as referee for the purpose of comparing it with his counter-signature on all checks drawn upon bankruptcy estate funds on deposit with it. It is conceded that the defendant knew that the deposit was an asset of the estate of Van Vechten Milling Co., Inc., bankrupt, and was made with it by Haidt in his capacity as duly appointed trustee of the bankruptcy estate.

In 1938 and 1939, Haidt as trustee forged the countersignature of Sanford as referee upon eight checks made payable to his own individual order and illegally appropriated the money when the defendant paid the checks. After such payments, the defendant never returned the vouchers to Haidt. That was due to the fact that Referee Sanford had instructed all the " depositories for bankruptcy funds not to release the checks to * * * trustees but to deliver them only to my [his] office." Some of the cancelled vouchers were delivered by the defendant on September 16, 1938, to a clerk of the Bankruptcy Court, who worked under the supervision of Sanford. The others were delivered to Referee Sanford on September 26, 1940. The dates are important since notice of the forgeries was given within one year of the latter date. The vouchers and bank statements after such delivery were put in an unlocked file in the referee's office to which Haidt had access. The statement of account delivered to the clerk with the first group of checks referred to above was later found to have been mutilated so that it did not disclose the payment of the first four forged checks. Those four checks had been abstracted from the file. The second group of checks, which had been delivered to Referee Sanford, was obtained by him because he had become suspicious of the conduct of Haidt. They were available on the trial.

Haidt was removed from the office of trustee by Referee Sanford who appointed one Herney as substituted trustee. The amount of the forgeries of Haidt was then determined and demand made upon the defendant bank for payment of the unauthorized and forged checks. That sum was paid by the plaintiff, on its bond, to Herney as trustee, who, with the authorization of Sanford, as referee, executed and delivered to plaintiff an assignment of his rights as trustee against the defendant bank. Upon the refusal of the defendant to make

good the amount of the forged checks, the plaintiff brought two actions, since consolidated, against the defendant. The first was based upon its rights as subrogee and assignee by reason of its payment to the substituted trustee Herney under its bond. The second action, entitled United States of America on the relation of the Maryland Casualty Company against the defendant, was brought upon the bond which the defendant, as an official depository, was required to give to United States of America conditioned upon the faithful discharge of its duties under the Bankruptcy Act, the full and faithful accounting for all moneys deposited in it as such depository and obedience to all orders of the court. Defendant does not contend in its brief that plaintiff has not established a prima facie case as to either action. Instead, it contends that recovery is barred, in whole or in part, by one or more of the five defenses pleaded in each action. Neither of the courts below passed upon the second action and we shall not discuss it further.

In the first action, we need only refer to the first two causes of action pleaded. The first was in tort and it was therein alleged that payment by the bank upon checks which it knew or should have known to be unauthorized, enabled the trustee to commit a breach of trust and to convert bankruptcy funds to his own use. In the second cause of action — in contract — it was alleged that defendant had failed to transfer and credit to the account of Herney, as trustee, the moneys which it had wrongfully paid to Haidt, although due demand had been made. therefor, and that defendant was therefore indebted to plaintiff as assignee for such moneys.

A consideration of the first of the five partial defenses interposed in the first action will necessitate the discussion of certain applicable rules of law which will be determinative of all but the fifth partial defense. That defense — the negligence of the referee — was necessarily rejected, as we shall see, since the two parties concerned were the defendant bank and the trustee, debtor and creditor respectively. Even were we to assume that the defense was that the failure of the referee, a judicial officer, to supervise closely the trustee's activities constituted the proximate cause of the loss, it must fail. The proximate cause was the payments of the bank upon forged counter-signatures.

The first partial defense, pleaded as applicable only to the first four of the forged checks, is based upon the time limitation embodied in section 326 of the Negotiable Instruments Law, which reads as follows: " No bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment, such depositor shall notify the bank that the check so paid was forged or raised."

The primary question for our determination is the identity of the " depositor " referred to in section 326, at least so far as to decide whether it is the judicial officer, the referee in bankruptcy. The Trial Justice, who sat without a jury and who gave judgment to the plaintiff under a stipulation that he could direct a verdict with the same force and effect as though a jury were present, found that Haidt as trustee was the depositor and that the vouchers showing payment of the forged checks had never been returned to him. See *Shattuck* v. *Guardian Trust Co.* (204 N. Y. 200, 210), where we said: " If the vouchers are never returned to him [the depositor] the statute [Negotiable Instruments Law, § 326] has no application, for he is only compelled to serve the notice within one year after the return to him of the voucher of each payment upon which the bank relies."

The Appellate Division specifically reversed that finding being of the opinion that the depositor in this instance was the " estate of the bankrupt ". It said: " As a depositor, of course, the estate of the bankrupt must work through the representatives of the Bankruptcy Court. A return of the vouchers to any officer of that court, whether he be the referee or the trustee, should make no difference in the application of the section." (271 App. Div. 651, 655-656.) We take the other view.

A depositor is one " who makes a deposit ", especially of money in a bank. (Bouvier's Law Dictionary [Rawle's 3d Revision].) The evidence discloses that Haidt personally brought the money to the bank, that he chose the depository from the four designated ones without direction, that he signed the signature card, that he was the " maker " of the checks drawn on the account, that the referee never handled money

himself and that the referee did not authorize anyone to make deposits on his behalf as a representative of the court.

That Haidt was the " depositor " is confirmed by reference to the scheme of the United States Bankruptcy Act. Separate duties are delegated to the trustee and to the referee. Clause (2) of subdivision (a) of section 47 (U. S. Code, tit. 11, § 75) provides that " Trustees shall  *  *  *  (2) deposit all money received by them in designated depositories  *  *  * ". The trustee is granted the power to make withdrawal by check or draft by clause (4) of subdivision (a) of section 47 and General Order No. 29. It has been written that the proper form for deposits by a trustee is " John Doe, as Trustee of Richard Roe, in Bankruptcy No. 000." (3 Collier on Bankruptcy, § 61.04.) In *Lamb* v. *Townshend* (71 F. 2d 590, 592, certiorari denied 293 U. S. 602) the court said: " The deposit of bankruptcy funds in an authorized depository ordinarily vests the ownership of the funds in the bank and creates a mere indebtedness on the part of the bank *to the trustee making the deposit.*" (Emphasis supplied.)

A trustee in bankruptcy is a statutory one in that his duties are prescribed in the Bankruptcy Act (see § 47 [U. S. Code, tit. 11, § 75]) but he is an active and not a passive trustee. In general his duty is summed up in clause (1) of subdivision (a) of section 47 of the act as follows: "  *  *  *  [to] collect and reduce to money the property of the estates  *  *  * under the direction of the court, and close up the estates as expeditiously as is compatible with the best interests of the parties in interest;  *  *  * ". Under subdivision (a) of section 70 (U. S. Code, tit. 11, § 110, subd. [a]) the trustee of the estate is specifically " vested by operation of law with the title of the bankrupt " as of the day he was adjudged a bankrupt, to all nonexempt property.

To hold here that the " estate of the bankrupt " is the depositor it would be necessary to consider Haidt and Sanford not only as trustee and referee respectively but also *as agents* whose principal was the " estate of the bankrupt ". It is true that a trustee may, under certain circumstances, also be an agent of his *cestui que trust.* (See, e.g., the comment in the Restatement, Agency, § 14, Comment c.) In a situation such

as that presented here, however, the trustee in bankruptcy is clearly *not* an agent. His primary duty is to collect and distribute the property of the bankrupt. He is vested with wide discretion. He is not required to follow the wishes of the creditors in the administration of the estate and he must assume responsibility for his acts (2 Collier on Bankruptcy, § 47.03; 2 Remington on Bankruptcy, § 1119). The following, quoted from *Whiting* v. *Hudson Trust Co.* (234 N. Y. 394, 407), is applicable here although the words used referred to a testamentary trustee: "Eckerson, trustee under the Snyder will, was not an agent identified with some one else, a principal, as the result of legal fiction. He was the principal himself. It is only a form of words when we speak of him as the representative of an 'estate.' The 'estate' had no separate existence. It was not a legal person. The only person was the trustee." We, therefore, conclude that the trustee in bankruptcy is the "depositor" of the funds of the bankrupt estate rather than the referee in bankruptcy or the "estate of the bankrupt".

In that situation the defendant is not absolved, as held below, from its absolute liability as a drawee bank for paying out moneys of a depositor upon his forged signature (*Frank* v. *Chemical Nat. Bank,* 84 N. Y. 209; *Crawford* v. *West Side Bank,* 100 N. Y. 50; *Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318) by reason of the common-law rule that the depositor was required to exercise diligence in examining his returned cancelled vouchers and in notifying the bank within a reasonable time of the fact of the forgery. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Morgan* v. *United States Mtge. & Trust Co.,* 208 N. Y. 218; *Potts & Co.* v. *Lafayette Nat. Bank,* 269 N. Y. 181; *Thomson* v. *New York Trust Co.,* 293 N. Y. 58, 68; *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96; *Prudential Ins. Co.* v. *National Bank of Commerce,* 227 N. Y. 510; *North British & Mercantile Ins. Co.* v. *Merchants' Nat. Bank,* 161 App. Div. 341.) The basis for the common-law rule was, of course, that either the drawee bank or the depositor, depending upon the varying circumstances of the individual case, although innocent of affirmative wrongdoing, might nevertheless suffer a loss since the forger was a third person and prompt action

by the depositor would tend to promote justice. It would afford the bank the opportunity of proceeding promptly against the forger and also enable it to correct at once any irregularity both for the protection of the bank and of the banking community in general. Here, however, the depositor was a trustee — a fiduciary holding legal title to assets of a bankrupt estate which were equitably owned by its creditors. The defendant understood that. Moreover, it knew that the Supreme Court had found it necessary to require that trustees such as Haidt should not have unlimited control over the moneys in their possession and that, therefore, Haidt's checks had to be countersigned by a representative of the district court. No common-law rule has been called to our attention which absolves the drawee bank from liability when such a fiduciary depositor forges a countersignature necessary to properly authorize the bank to pay a draft or check and then fails to notify the bank of his act of forgery within a reasonable time. Such failure to give notification would not be " negligence " on the part of the depositor but a failure to confess criminal guilt which he could not be reasonably expected to make. Since section 326 was but a statutory modification and embodiment of an *existing* common-law rule, it has no application here. (*Shattuck* v. *Guardian Trust Co., supra,* at p. 210.) That section was to cover the forging of the maker's signature or the raising of his check. It was not meant to include all forms of forgery nor all alterations (*Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.,* 244 App. Div. 404, 414, mod. on other grounds, 272 N. Y. 411; see, also, discussion in *North British & Mercantile Ins. Co.* v. *Merchants' Nat. Bank,* 161 App. Div. 341, 355, *supra*) nor the forgery of a countersignature of an official of the District Court required by a court rule (General Orders in Bankruptcy, No. 29) before the defendant was authorized to honor its depositor's checks.

Moreover, here the defendant bank assisted Haidt in converting the money of the bankrupt and in breaching his trust by honoring improperly drawn and unauthorized checks. It had agreed to pay out moneys of the depositor upon properly countersigned checks. Instead it paid them out through error upon checks bearing forged countersignatures. Those were no

countersignatures at all. A recognition of the forgeries by the defendant, as it was obligated at its peril to do, would have put it upon inquiry and inquiry would have led to actual knowledge of the conversion. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225, 231, 233; *Fidelity & Cas. Co.* v. *Farmers Nat. Bank,* 275 N. Y. 194, *supra*; *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co., supra.*) It may have been what was termed in the *Matteawan Mfg. Co.* case (*supra*, at p. 414) a " plain though innocent conversion " as far as defendant was concerned, but it is assuredly a situation where one who, by his own mistake and neglect, is responsible for or the cause of a loss, is required to bear it instead of innocent parties, in this instance the bankrupt's creditors, in whose shoes the plaintiff happens to stand. (*North British & Mercantile Ins. Co.* v. *Merchants' Nat. Bank, supra*; *First Nat. Bank* v. *American Exch. Nat. Bank,* 49 App. Div. 349, affd. 170 N. Y. 88; *McWilliams* v. *Mason,* 31 N. Y. 294; *Hurd* v. *Kelly,* 78 N. Y. 588, 597; *Timpson* v. *Allen,* 149 N. Y. 513, 520.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment accordingly.