■ ERNST & Co., Appellant, v CHEMICAL BANK, Respondent. (And a Third-Party Action.) [618 NYS2d 705] —Order, Supreme

Court, New York County (Beatrice Shainswit, J.), entered May 4, 1994, which denied plaintiff's motion for summary judgment and granted summary judgment to defendant, dismissing the complaint as well as the latter's third-party complaint, unanimously modified, on the law, to the extent of denying defendant's cross motion, reinstating the pleadings, and otherwise affirmed, without costs.

Plaintiff, a securities brokerage house, holds certain of its customers' securities in its own or a "street" name. The dividends and/or interest earned on such securities are credited periodically to each customer's house account and then disbursed to the customer, if so requested. Disbursements are forwarded by checks, drawn on plaintiff's dividend account at defendant Chemical Bank, which are run monthly from a client computer listing, each check bearing the name of the customer payee, the amount, and the facsimile imprint of plaintiff's authorized signatory. As an identifier, the final check in each monthly run is printed in blank, bearing the facsimile signature, but without a payee or amount. Two of these signed-in-blank final checks—one from the August 1992 run and the other from the September 1992 run—were stolen by persons unknown, amounts ($50,000 and $100,000, respectively) and a fictitious payee ("Micro-Care Systems") were inserted, and the checks deposited into the collection stream. The proceeds of the second fraudulent check were recovered. The other is the subject of this case.

On August 19, 1992, the $50,000 check was used to open a business money market account for Micro-Care Systems at Fidelity Investments. The Fidelity application, filled out by an individual identifying himself as Mathew Young, "President/owner" of Micro-Care Systems, included a certification designating him with full authority over the account. (This certification was itself subscribed by Mathew Young, despite the requirement on the application form that "If the person signing * * * is also named as an authorized individual in this section, a different officer or authorized individual must certify * * * unless this person is the sole officer.") The check was endorsed simply with the signature of Mathew Young, and presented for deposit into the Micro-Care Systems account without any indication that the negotiation was representative on behalf of the named payee. Fidelity's alter ego, intervenor National Financial Services Corporation ("NFSC"), having just dealt with what it believed to be the authorized represen-

tative of a new business client, accepted the check and deposited it in its account at third-party defendant Chase Manhattan Bank, with its endorsement bearing the legend "ABSENCE OF ENDORSEMENT GUARANTEED". Chase, the depositary bank, thereupon presented the instrument to the drawee, defendant Chemical, which paid it out of plaintiff's account on about August 24, 1992. The Micro-Care investment account at Fidelity has been liquidated, and both it and the illusory Mathew Young have vanished. When Chemical refused plaintiff's demand to replenish the $50,000 debit, this action ensued. Chemical impleaded Chase on the latter's standard collection warranty of good title (see, UCC 4-207), and NFSC was thereupon invited to intervene.

Plaintiff moved for summary judgment on the ground that the check should not have been paid by the drawee because it did not bear the endorsement of the named payee. Chemical thereupon cross-moved for judgment over against the depositary, in the event summary judgment were granted to plaintiff.

The IAS Court erred in granting summary judgment dismissing the complaint. That was, it should be noted, relief the drawee had not even asked for.

The UCC imposes strict liability on a bank that charges against a customer's account any item not "properly payable" (UCC 4-401 [a]), such as a check bearing a forged signature (Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., 74 NY2d 340, 345). The IAS Court noted initially that this check was not properly payable because of the facial discrepancy between the payee and the endorser. However, an exception exonerates the drawee where the proceeds of such an "improperly paid" check actually reach the party "intended to receive them", the rationale being that the drawer would then have suffered no loss (Tonelli v Chase Manhattan Bank, 41 NY2d 667, 670; cf., Kosic v Marine Midland Bank, 76 AD2d 89, affd 55 NY2d 621). Here, the court reasoned, the only defect was the failure of Mathew Young, already "known" to his endorsee as an authorized representative of the named (albeit fictitious) payee, to add words of agency to his endorsement. Since the check made out to Micro-Care Systems did end up in the Micro-Care Systems account, the court held that the omission of the words of agency from the endorsement did not cause the loss to plaintiff (citing Perini Corp. v First Natl. Bank, 553 F2d 398). It was on this basis that the IAS Court granted summary judgment dismissing the complaint.

In Perini (supra), the Fifth Circuit noted that a depositary

bank has the power to fill in an omission on a customer's endorsement, unless the item contains a specific requirement for the named payee's personal endorsement (UCC 4-205 [1]). However, the supplying of a missing endorsement "cannot eliminate the depositary and collecting banks' warranty of title or the drawee's duty to accept only properly payable items" (553 F2d, *supra,* at 411). The court went on to hypothesize that if a check thief were to convince a depositary bank that he was the named payee, so as to permit him to deposit the check into an account he had opened under that name, this would still not absolve any of the banks in the collection/payment chain of potential liability for breach of title warranty. In this light, serious questions arise concerning the propriety of the intervenor in allowing Mathew Young to open a company account over which he would have lone authority, based solely on his own certification. If the improper negotiation and payment of this check were facilitated by the intervenor's oversight, then the exception to the improper payability of the check would not apply, and the depositary bank's warranty of liability should permit plaintiff to seek recompense from its drawee.

But before this case can be summarily disposed of in plaintiff's favor, the question must be confronted as to why plaintiff's check runs necessarily concluded with a signed-in-blank check, and what safeguards were in place against the apparent theft that took place here, on more than one occasion. If plaintiff's security measures were lax, its action against the drawee might be precluded by what pre-UCC courts called "estoppel by negligence" *(National Exch. Bank v Lester,* 194 NY 461, 465; emphasis omitted) or "estoppel by carelessness" *(Maryland Cas. Co. v Central Trust Co.,* 51 NYS2d 65, 71, *revd* 271 App Div 651, *revd* 297 NY 294).

"Any person who by his negligence substantially contributes * * * to the making of an unauthorized signature is precluded from asserting * * * lack of authority * * * against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." (UCC 3-406.) The principal cause of such a loss is often the act of a thief, rather than that of any of the parties to the dispute; but acts or omissions that make a theft easier may give rise to preclusion or estoppel under the statute (1B White & Summers, Uniform Commercial Code § 16-3, at 70 [Practitioner's 3d ed]). The statute requires a showing of "negligence [that] substantially contributes" to the loss. New York is among those States whose

courts have interpreted this as not necessarily meaning negligence of a more than ordinary nature, but rather negligence whose contribution is so substantial as to shorten the chain of proximate cause *(Fidelity & Deposit Co. v Chemical Bank N. Y. Trust Co.,* 65 Misc 2d 619 [App Term], *affd* 39 AD2d 1019; *see also, Commonwealth v National Bank & Trust Co.,* 469 Pa 188, 364 A2d 1331; *Dominion Constr. v First Natl. Bank,* 271 Md 154, 315 A2d 69; *but see, Bagby v Merrill Lynch, Pierce, Fenner & Smith,* 491 F2d 192). By whatever standard, a showing of mere laxity in the handling of checks might not be enough *(Behring Intl. v Greater Houston Bank,* 662 SW2d 642 [Tex]), whereas careless security with regard to personnel allowed access to blank checks might very well substantially contribute to the facilitation of unauthorized disbursements *(Neely Enters. v American Natl. Bank,* 403 So 2d 887 [Ala]; *Terry v Puget Sound Natl. Bank,* 80 Wash 2d 157, 492 P2d 534; *cf., Brogan Cadillac-Oldsmobile Corp. v Central Jersey Bank & Trust Co.,* 183 NJ Super 333, 443 A2d 1108, *affd* 190 NJ Super 500, 464 A2d 1141).

What is clear, in any event, is that in the absence of discovery on this issue, the question of whether plaintiff's procedures constituted negligence, substantially contributing to its loss, should be for a trier of facts *(Grimshaw Co. v First Natl. Bank & Trust Co.,* 563 P2d 117 [Okla]; *Terry v Puget Sound Natl. Bank, supra),* not for the court on summary judgment. Concur—Murphy, P. J., Carro, Ellerin, Wallach and Kupferman, JJ.