T. Paul Kane, J.
Plaintiffs subcontractors institute a class action under article 3-A of the Lien Law of the State of New York against defendant contractor (hereinafter called “ Schecter ”), a subsidiary of same, Jesco Corporation, Schecter individually and Bankers Trust Company (hereinafter called “ Bankers ”), the banking institution where “ Schecter ” maintained its general business account, and the institution it relied upon for its financing. Upon this motion for summary judgment by plaintiffs, defendant Bankers cross-moves for summary judgment. The moving papers in both instances state the motion is under CPLR 3212 though there is nothing before the court to show the joinder of issue.
The facts seem clear and are not in substantial dispute. J. E. Schecter Corporation is a heating and air-conditioning contractor in the metropolitan New York area and a customer *291 of codefendant Bankers. It maintained a general corporate checking account with Bankers and deposited the proceeds from its various construction projects in this account. Scheeter’s obligations on their various projects were paid from this account. From time to time, and as required, Scheeter received advances from Bankers upon a line of credit up to a maximum of $400,000. These loans were evidenced by 30-day unsecured guaranteed notes. This was the general pattern of Scheeter’s financial operation from September, 1953 to July, 1962.
The plaintiffs are subcontractors who commenced work for Scheeter on a project at the General Electric Research Laboratory, Schenectady, New York, in the Summer of 1960. They allege that there are presently unpaid balances on their subcontracts from Scheeter in an amount of about $150,000. Scheeter admits owing approximately $138,000 on these subcontracts but that J. E. Scheeter Corporation is insolvent and a debtor in possession under the provisions of the Bankruptcy Act following the filing of its petition late in 1962. It appears that Scheeter’s financial difficulties became known to Bankers on June 27, 1962. Thereafter on July 2, 1962, Bankers debited two of Scheeter’s notes in the sum of $300,000 against an account balance of $37,584.59. Plaintiffs seek to recover the amount of this account balance together with additional sums from Bankers, Jesco Corporation and Jack E. Scheeter individually in this action, claiming a diversion of trust funds by them, relief for which is provided by article 3-A of the Lien Law.
To resolve the issues raised by the parties hereto, the court must first examine the ‘1 trust fund provisions ’ ’ of the Lien Law and apply those provisions to the facts before it. The court notes that the history of these provisions reveals it to be an area of the law which it would be error to term as well settled. Despite the necessity of frequent amendments there are still unanswered questions, many of them due to the most recent amendments. Nevertheless, the objective of the Legislature has always been clear; that is, to insure funds earned in the performance of a contract of improvement will in fact be used to pay the costs of that improvement or as the Court of Appeals proclaimed “ to protect those whose skill, labor and materials made possible the performance of a construction contract and who in fact, creating the improvement, actually gave rise to the owner’s obligation to pay.” (Aquilino v. United States, 10 N Y 2d 271, 278-279.)
In its present form the trust provisions of article 3-A of the Lien Law unquestionably establish a trust upon receipt of funds by a contractor under or in connection with a contract for *292 an improvement of real property or a contract for a public improvement in this State. (Lien Law, § 70, subd. 1.) Doubt created by case law (Raymond Concrete Pile Co. v. Federation Bank, 288 N. Y. 452; Gramatan-Sullivan, Inc., v. Koslow, 240 F. 2d 523) as to when the trust arises was referred to in the Aquilino case (supra, p. 280) and subsequently clarified by section 72 of the Lien Law, added by section 2 of chapter 696 of the Laws of 1959. It is clear, therefore, that a diversion of a trust asset is a breach of trust, ‘ ‘ whether or not there are trust claims in existence at the time of the transaction ”. (§72.) Hence, the scope and extent of relief provided by article 3-A is well defined as it applies to owners, contractors and subcontractors. Plaintiffs contend, however, that Bankers became a statutory trustee when moneys were deposited in the account of Schecter. Nothing in article 3-A inclines this court to that conclusion, nor does plaintiff offer any precedent to support this position. No one other than an owner, contractor or subcontractor is designated as a prospective trustee in article 3-A. Therefore, if plaintiff is to prevail against Bankers, liability could not be based upon the ground that the latter was at any time a statutory trustee.
A review of the trust law principles applicable to banks in which trust funds are deposited adds perspective to the contending points of law. A bank in which trust funds are deposited is under no duty to exercise vigilance to protect the trust estate from possible misappropriation by the trustee who is authorized to act as such, and is not bound to inquire whether the fiduciary is applying such funds to the purposes of the trust, unless the bank has some notice of a threatened misappropriation and with that notice aids in the misappropriation. (Grace v. Corn. Exch. Bank Trust Co., 287 N. Y. 94; Clarke v. Public Nat. Bank & Trust Co., 259 N. Y. 285.) Nor does a bank become privy to a misappropriation by merely paying or honoring checks of a depositor drawn upon his individual account in which there are, to the knowledge of the bank, credits created by deposits of trust funds. The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. The presumption is that the depositor will preserve or lawfully apply the trust funds. (Bischoff v. Yorkville Bank, 218 N. Y. 106.) These rules are understandable, for an unrestricted deposit of funds by a fiduciary is ordinarily regarded as general in character, and even the fact that the depositor adds to his name words descriptive of the fiduciary character in which he holds the funds, does not render the *293 deposit a special one. (Matter of Wasserman v. Broderick, 140 Misc. 174.) Authority exists to the contrary, hut not in this State. Practical considerations make adhesion to these principles advisable. The human participation required if the law were otherwise would render an intolerable burden upon financial institutions, in view of the complexity of the auditing functions of a commercial bank and the utilization of automation in that function.
Knowledge, as is often the rule, determines the absence or existence of a legal duty. The specific knowledge required herein to establish a diversion is that the assignee have actual knowledge of the existence of unpaid claims for supplies and materials (Raymond Concrete Pile Co. v. Federation Bank, 288 N. Y. 452, supra; Gramatan-Sullivan, Inc., v. Koslow, 240 F. 2d 523, supra; United Lakeland Air Conditioning Co. v. Ahneman-Christiansen, Inc., 33 Misc 2d 606). Other than to indicate that Bankers had knowledge that some trust moneys were involved, plaintiffs do not allege that Bankers possessed actual or even constructive knowledge of the existence of any unpaid claims, let alone on the project in question. Knowledge of such would only be gained through inquiry of the status of all projects by Bankers at the time a particular withdrawal was in process, a duty which this court is reluctant to recognize unless it could clearly be shown to exist. Beluctance is increased by the fact that the statute itself permits of commingling of trust and nontrust funds. (Lien Law, § 75, subd. 1.) The account in question was commingled to the extent that it could have contained proceeds from more than 20 different projects, some of which would not be subject to the provisions of article 3-A of the Lien Law.
Accordingly, the court finds in this case that Bankers had no knowledge of the existence of unpaid claims nor a duty to inquire as to the existence of unpaid claims, despite full knowledge that some trust assets would be deposited in the general checking account. Hence, the affirmative defense provisions raised under section 73 of the Lien Law do not apply.
Plaintiffs suggest that Concrete Pile and Gramatan cases (supra) are no longer law. To the extent that these cases held that a trust beneficiary could not attack a transfer made before his claim, the court concurs with plaintiffs. Subdivision 1 of section 72 of the Lien Law has corrected this misconception but other principles enunciated have remained unchanged and are of precedential value.
Coupled with and incident to the lack of required knowledge, which by itself could defeat plaintiffs’ action against Bankers, *294 the court also finds that Bankers was a “ purchaser for value ” as defined in section 72 of the Lien Law. A general deposit, which is the form of the account in question, creates a relationship of debtor and creditor between the bank and depositor. The bank acquires title to the money which becomes a part of its general funds. (Matter of Delaney, 256 N. Y. 315; Fidelity & Cas. Co. v. Farmers Nat. Bank of Hudson, 275 N. Y. 194.) A bank would be deemed to give “ value ” for its “ purchase ” of such moneys when an amount equal thereto is subsequently withdrawn from the account by the customer. (3 Scott, Trusts [2d ed.], § 303.2; Merchants Nat. Bank of St. Paul v. Santa Maria Sugar Co., 162 App. Div. 248, affd. 220 N. Y. 732.) Consequently, defendant successfully sets forth a defense as a matter of law to any and all enforcement provisions of article 3-A. The answering affidavit of Jack E. Schecter fails to raise a substantial factual question which would defeat a motion under CPLR 3212.
Motion for summary judgment by plaintiffs is granted in part insofar as it seeks judgment against Jesco, J. E. Schecter Corporation, and Jack E. Schecter for the amount demanded in the complaint; but as against Bankers, the same is denied. Cross motion by Bankers for summary judgment is in all respects granted.