ULSTER SAVINGS BANK, Respondent, v TOTAL COMMUNITIES, INC., et al., Defendants, and BANK BROS. PLUMBING & HEATING, INC., et al., Appellants.

Third Department, December 30, 1976

*McClung, Peters & Simon (Phillip S. Arensberg* of counsel), for Total Communities, Inc., and others, appellants.

*St. John, Ronder & Bell (Samuel Kirschenbaum* and *Dreyer & Taub* of counsel), for respondent.

*Per Curiam.* Appellants are all holders of duly filed liens for services and materials furnished on property located in Kingston owned by defendant Roger E. Goodwin and/or defendant Total Communities, Inc. Respondent Ulster Savings Bank holds a building loan mortgage on the subject property pursuant to a building loan agreement dated November 17, 1972. On or about January 14, 1975 respondent began a foreclosure action against the property in which all of the

appellants were named as defendants. Upon the advice of counsel, each appellant filed a notice of appearance and waiver in the action. On May 23, 1975 Special Term granted judgment of foreclosure and sale to respondent.

On June 17, 1975 appellants procured orders to show cause why the judgment of foreclosure and sale in the main action should not be vacated and appellants permitted to file and serve answers pursuant to CPLR 5015. The motion was denied by Special Term on the ground that appellants did not have a meritorious defense to the foreclosure action.

Appellants' proposed answer in the mortgage foreclosure action alleges two defenses, both of which were held by Special Term to be insufficient. On this appeal, we will only deal with one defense now urged by appellants as being sufficient, if proved, to defeat respondent's cause of action.

Appellants' proposed defense is that respondent's building loan mortgage should be subordinated to appellants' mechanics' liens because the verified borrower's statement required by section 22 of the Lien Law to be filed with the building loan contract in the county clerk's office of the county where the property is located on or before the date the building loan mortgage is recorded was defective. Section 22 requires: "[A] true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and *the net sum available to the borrower for the improvement"* (emphasis supplied).

The borrower's statement filed with respondent's building loan contract apparently failed to accurately reflect the sum available to the borrower for improvements because defendant Goodwin, who made and verified the statement, failed to include as an expense a prior mortgage which was satisfied out of proceeds of the building loan, allegedly simultaneously with the closing of the mortgage and building loan contract. The appellants allege that the respondent had full knowledge of the correct expenses at the time the borrower's statement was made. For purposes of this motion, appellant's allegations as to the bank's knowledge regarding the intended use of the proceeds contained in appellants' proposed answer must be presumed to be controverted (CPLR 3018, subd [a]).

Appellants on this appeal contend that the failure of respondent to file an accurate sworn statement of the borrower with the building loan contract as required by section 22 of the

Lien Law constitutes a meritorious defense to the main action of foreclosure. They further contend that they should be relieved of their default in the main action because that default was based upon either excusable neglect of the appellants or fraud, misrepresentation, or other misconduct on the part of respondent. Respondent contends that the default was not excusable and that the appellants do not have a meritorious defense to the main action and therefore the judgment in the main action should not be vacated.

In order to determine whether appellants have a meritorious defense to the main action this court must decide whether the mortgage, given to a lender who files a verified borrower's statement pursuant to section 22 of the Lien Law which incorrectly states the net sum available from the loan for the improvement, loses priority over subsequently filed mechanics' liens which attached to the property subject to the building loan mortgage on account of work performed on the improvements covered by the building loan.

In the instant case respondent filed the building loan contract together with the verified borrower's statement of defendant Roger E. Goodwin, president of defendant Total Communities, Inc. In the statement defendant Goodwin stated that the consideration to be paid to respondent for the loan was $2,127,000 and that all other expenses incurred in connection with the loan amounted to $26,689, leaving a net sum available for the improvement of $2,100,311. The only expenses included were for examination and insurance of the title and recording fees and for the mortgage tax. It is not disputed that the borrower's statement did not mention approximately $63,000 which was used to pay off a prior mortgage or various other expenses commonly involved in connection with building loan mortgages, and that the net sum available was stated to be $2,100,311. Appellants contend that since the verified borrower's statement inaccurately reflected the net sum available to the borrower for improvements, the building loan contract was not filed as required and, therefore, respondent's building loan mortgage should be subject to appellants' mechanics' liens.

Section 22 declares that the filed building loan contract "*must* contain a *true* statement under oath, *verified by the borrower,* showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and

the net sum available to the borrower for the improvement" (emphasis supplied). It then goes on to provide: *"If not so filed* the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter" (emphasis supplied). The question under section 22 is whether the building loan mortgagee's responsibility ends when a borrower's verified statement is filed with the building loan contract, or whether the mortgage is subject to the penalties of section 22 if the statement is known by the mortgagee to be false at the time it is filed.

To answer this question we must ascertain from an analysis of the language of section 22 the intent of the Legislature in enacting it. Admittedly the over-all purpose of the section is to protect contractors furnishing labor and materials. We are here concerned, however, with the obligation the section imposes on the lender before a penalty attaches. Prior to an amendment of section 22 in 1930, it required only the building loan contract to be filed by the lender. No action was required by the borrower. The purpose of the section prior to 1930 was to acquaint suppliers of labor and materials with the fact that they did so subject to claims prior to theirs and to inform them of the time and amounts of advances to be made by the lender *(McDermott v Lawyers Mtge. Co.,* 232 NY 336). The amendment added a further protection to a contractor by requiring a true statement under oath verified by the borrower of expenses incurred to be filed. The only new obligation imposed on the lender was to file such statement with the building loan contract which was done in the instant case. Significantly the section clearly makes no mention of the statement being verified by the lender. We believe it reasonable to infer that the Legislature intended only the borrower and not the lender be penalized for filing the false statement. This is logical for the statement would normally contain information peculiar to the borrower. Appellants would have us conclude that the Legislature intended the penalty to apply also to the lender if he knew the statement was false. There is no language in the statute saying a lender loses its priority if it had knowledge the statement was false. Such an interpretation would be enlargement and extension of the Legislature's intent and we would, in effect, be legislating, which we may not lawfully do. Furthermore, it would have been easy for the Legislature to include the few necessary words to impose a

penalty on a lender who knew the statement to be untrue. This was not done and we must assume the Legislature knew what it was doing and, consequently, did not so intend. We may not read into the statute what the Legislature intended should be left out or add language we believe should have been included. Our duty is to interpret the statute as written. It is for the Legislature and not the courts to enlarge the scope of the statute. Special Term, in our view, properly determined appellants do not have a meritorious defense.

The orders should be affirmed, with costs.

GREENBLOTT, J. (dissenting). We respectfully dissent.

In our opinion, the mortgagee is subject to the penalties of section 22 of the Lien Law if the borrower's verified statement is known by the mortgagee to be false at the time it is filed.

In *HNC Realty Co. v Golan Hgts. Developers* (79 Misc 2d 696) the court adopted this view. In the case at bar, the majority has declined to follow the reasoning of *HNC Realty,* taking the view that nothing in the statute justifies a disparity of treatment depending on the lender's knowledge or lack of knowledge as to the falsity of the statement, and, therefore, an interpretation should not be adopted which would discourage lenders from incurring the risks inherent in building loans.

It is our view that when the purpose of section 22 is considered together with other pertinent provisions of the Lien Law, a disparity of treatment based on the lender's degree of knowledge is indeed justified. Section 22, as we have seen, has as its purpose the notification of materialmen, laborers and other lienors as to the amount of the fund which is being made available to purchase their services, and under subdivision (3) of section 13 of the Lien Law, such a fund is required to be held in trust for their benefit. In reliance upon the knowledge that such a trust fund exists, potential lienors are relieved of having to look to other forms of security. The very fact that the proceeds of a loan are deemed to be held in trust is ample reason to reject Special Term's theory that appellants were not prejudiced by the payment of a debt the existence of which was a matter of public record, for there is nothing to show that the prior mortgage was a "cost of improvement" entitled to be paid out of the trust fund. If that prior mortgage was not entitled to be satisfied out of the trust fund, appellants clearly were prejudiced by being led to be-

lieve that the amount which would be held in trust for payment of their claims was greater by $63,000 than the amount actually available.

This is not to say that the lender is under any duty to see that the trust fund is properly applied, and subdivision (3) of section 13 is clear in its declaration that no such obligation exists. Thus, had the respondent actually turned over to the defendant borrowers an amount equal to that set forth in the borrower's statement as the net sum available, section 22 would not operate to subordinate respondent's mortgage in the event of an impermissible diversion or misappropriation of those funds at a subsequent time.

This, however, is not the basis of the appellants' claim. Rather, it is alleged that the bank had knowledge that the net proceeds of the loan did not equal the "net sum available" as set forth in the borrower's statement. If this allegation could be proven, by a showing as to the distribution of proceeds at the closing of the loan or otherwise, we see no reason for excusing respondent from the consequences of being party to a filing which failed to meet the requirements of section 22. Such a result will not, as Special Term feared, operate to make mortgage lenders guarantors of the correctness of all expense statements by the borrower. It merely will require a lender, who is in as good position as a borrower to know the net sum advanced, to see to it that that sum is in fact turned over to the borrower in accordance with the filed statement. What happens thereafter is not the lender's responsibility, but the truth of the statement at the *time it is filed* is a matter for which the lender is capable of being, and therefore should be, held responsible.

Since the court at Special Term denied appellants' motion on the merits of the proposed defense, it did not reach the question of whether appellants had shown grounds for relieving their default under CPLR 5015. While appellants' default here is not of the ordinary kind, since they did appear and file waivers, it is our view that their default in answering respondent's complaint, on the unusual facts of this case, is within the intended meaning of a default leading to an adverse judgment under CPLR 5015. While respondent contends that there was no misrepresentation justifying vacatur of the judgment since respondent's complaint contained a copy of the verified borrower's statement, it is the alleged falsity of that statement which appellants contend led them to conclude that

no defense to the foreclosure action existed. At the very least, it is our view that the default was excusable, and considering the dispatch with which appellants moved to vacate it, we conclude that it would be an abuse of discretion to deny the relief requested.

We would grant the motion to vacate the judgment, and if, upon service of appellants' answers it appears that there are questions of fact as to respondent's knowledge of the falsity of the verified borrower's statement under section 22 of the Lien Law or as to whether the $63,000 mortgage alleged to have been paid represented a cost of improvement, a trial should be had.

SWEENEY, KANE and MAIN, JJ., concur in *Per Curiam* opinion; KOREMAN, P. J., and GREENBLOTT, J., dissent and vote to reverse in an opinion by GREENBLOTT, J.

Orders affirmed, with costs.