MINER, Circuit Judge:
Plaintiff-appellant Ritz-Craft Corporation of PA, Inc. (“Ritz-Craft”) appeals from a judgment entered in the United States District Court for the Southern District of New York (McMahon, /.) dismissing its action to declare its mechanic’s lien superior to the mortgage lien of defendant-appellee National Electric Benefit Fund (“NEBF”). Ritz-Craft and NEBF are creditors of a bankrupt partnership, Nob Hill Partners III, L.P. (“NHP-III”), which was formerly engaged in developing a section of an apartment complex in Elmsford, New York. NEBF was the construction lender for the project, while Ritz-Craft manufactured, delivered, and erected one-hundred and twenty modular housing units for NHP-III. Neither NEBF nor Ritz-Craft has been paid in full by NHP-III; both have filed liens against NHP-III’s real property.
In May of 1998, Ritz-Craft commenced an adversary proceeding in which it claimed that its lien was superior to *117 NEBF’s lien. Ritz-Craft’s claim was based on the assertion that NEBF had filed a materially false affidavit in connection with its construction loan, entitling Ritz-Craft’s lien to priority over NEBF’s lien. On May 28, 1999, the United States Bankruptcy Court for the Southern District of New York (Hardin, Bankr.J.) granted summary judgment in favor of Ritz-Craft after finding that NEBF’s affidavit was materially false, and that its false filing subjected it to the penalty of subordination under New York’s Lien Law. See Ritz-Craft Corp. of PA, Inc. v. National Educ. Benefit Fund (In re Elm Ridge Assocs.), 234 B.R. 349, 355-56 (Bankr.S.D.N.Y.1999) (“Ritz-Craft I”). On November 19, 1999, the United States District Court for the Southern District of New York reversed the bankruptcy court’s judgment and dismissed Ritz-Craft’s claim, the district court having found that NEBF’s Lien Law affidavit was not materially false. See Ritz-Craft Corp. of PA, Inc. v. National Electrical Benefit Fund (In re Elm Ridge Assocs.), 241 B.R. 321, 330 (S.D.N.Y.1999) (“Ritz-Craft II”).
For the reasons that follow, we affirm the judgment of the district court.
BACKGROUND
I. The Parties
This appeal arises out of the bankruptcy of three limited partnerships formed to facilitate the development of Nob Hill Ridge, a 416 unit rental housing complex located in Elmsford, New York. Nob Hill Ridge was developed in three sections— Sections I, II, and III. At the time in which the events relevant to this appeal occurred, each section was owned by one of the partnership debtors, and each of the debtors was owned and controlled by the same individuals — Dennis Bruschi, David Peipers, Henry Reiter, and the late Albert Myers. The partnerships that owned and developed Nob Hill Ridge were Elm Ridge Associates (“ERA”), which developed Section I, Elm Ridge Associates II (“ERA-II”), which developed Section II, and NHP-III, which developed Section III.
Ritz-Craft was a contractor on the Nob Hill Ridge project, supplying pre-fabricat-ed housing for Sections II and III. On Section III, the portion at issue in this appeal, Ritz-Craft’s contract price for manufacturing, delivering, and erecting one-hundred and twenty modular housing units was $3,194,057.00, of which Ritz-Craft has been paid all but $384,251.52. On April 30, 1996, Ritz-Craft filed a mechanic’s lien in the amount of the unpaid balance in the office of the Westchester County Clerk.
NEBF is the jointly managed pension fund of the International Brotherhood of Electrical Workers and the National Electrical Contractors Association. NEBF financed the entire Nob Hill project, lending about $14 million to NHP-III, virtually all of which remains unpaid. NEBF filed a claim in the bankruptcy for $13,919,874, representing principal, interest, fees, and expenses owed to it by NHP-III.
NHP-III purchased most of the Section III real estate from Cross Westchester Development Corporation (“Cross West-chester”), and a smaller portion from Herb and Lucette Besson. NHP-III entered into a written contract with Cross West-chester on December 8, 1994, and fee title passed to NHP-III on or about February 14,1995.
The entire Nob Hill Ridge complex is located on one site. Thus, Sections I, II, and III share certain essential infrastructure. At some time during 1994, the developers of Sections II and III concluded that certain basic structural work should be completed on the Section III site, even though NHP-III had not yet taken title to the - site. This work, the “Common Site Work,” included: (1) basic earthwork, including clearing and grubbing, rock excavation, and rough grading; (2) retaining wall work; (3) street widening and the creation of sidewalks and curbs; (4) the installation of a water supply system; (5) connecting the water main to the municipal *118 water supply; (6) installing fire hydrants and valves; (7) creating storm water management systems; (8) installing a sanitary sewer system; and (9) installing the mains, cables, and wiring necessary for gas, electric, telephone, and cable television service. Because the Section III construction loan was not yet in place, the developers decided that ERA-II would pay for NHP-III’s portion of the Common Site Work, and that NHP-III would reimburse ERA-II when it received the proceeds of the Section III construction loan. ERA-II and NHP-III entered into a separate written agreement with respect to reimbursement for this infrastructure work.
II. The Loan and Related Filings
On or about February 17, 1995 — three days after NHP-III took title to the site — • NHP-III and NEBF entered into a building loan contract, pursuant to which NEBF agreed to loan to NHP-III an amount not to exceed $12,080,000 for use in the construction of Section III.[1] In connection with this loan, NHP-III and NEBF executed a building loan contract that included two statements required by the New York Lien Law and intended to establish NEBF’s priority over subsequent creditors. First, in accordance with the requirements of New York Lien Law § 13,[2] paragraph 12 of the building loan contract states that NHP-III will hold the advances it receives or has a right to receive “as a trust fund for the purpose of acquiring the Real Estate and paying the costs of construction of the Improvements.” It further provides that the funds will be applied to those purposes ahead of all other purposes.
At the same time that it filed the building loan contract and recorded its mortgage, NEBF filed an affidavit sworn to by Henry Reiter, the manager of the corporation that was the general partner of NHP-III. Reiter’s affidavit was filed for the purpose of complying with New York Lien Law § 22. That provision requires that the parties to a building loan contract file a certified statement setting forth, inter alia, “the net sum available to the borrower for the improvement” in the clerk’s office in the county in which the property is located. N.Y. Lien Law § 22. The section 22 affidavit filed in connection with the Section III construction loan states that “the net sum available to the borrower for the improvement is $5,809,000.00.”
The loan closed on February 23, 1995. At the closing of the loan, NEBF advanced $6,639,234.59 to NHP-III for the project. The advance included $4,616,191.00 to reimburse ERA-II for the Common Site Work, $1.5 million for land acquisition, and approximately $500,000 for title fees, legal fees, and other costs. Immediately after the closing, NEBF perfected its security interest in Section III by filing the building loan contract and recording the mortgage in the Westchester County Clerk’s office.
In December of 1995, NEBF increased its loan commitment to NHP-III by an additional $1,920,000.00, raising the total amount available under the loan to $14 million. In connection with the increased loan commitment, another section 22 affi *119 davit was filed in the Westchester County Clerk’s office stating that an additional $1,393,000.00 was available to the borrower for the improvement. Thus, the two affidavits together stated that the total sum “available to the borrower for the improvement” was $7,202,000.00.
III. The Bankruptcy Court Proceedings
On May 5, 1998, Ritz-Craft commenced an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York. Ritz-Craft’s complaint asserted that its mechanic’s lien was entitled to priority over NEBF’s mortgage lien for three reasons: (1) Ritz-Craft averred that Henry Reiter’s section 22 affidavit misstated his title as manager of the corporate general partner of ERA-II, rather than of NHP-III;[3] (2) Ritz-Craft argued that “a portion of the loan proceeds received from NEBF for Section III were utilized for Section II” and that this fact warranted subordination of NEBF’s lien; and (3) Ritz-Craft asserted that NEBF’s lien should be subordinated to its own under principles of equitable subordination.
After rejecting Ritz-Craft’s misidentifi-cation of the borrower argument at a hearing on March 24, 1999, the bankruptcy court rendered its decision on the other issues on May 27, 1999. At the outset of its opinion, the bankruptcy court noted that the sole issue for determination was “whether the Section 22 Lien Law Affidavit correctly stated the ‘net sum available to the borrower for the improvement,’ and if not, the legal consequence of such failure.” Ritz-Craft I, 234 B.R. at 352. The bankruptcy court further observed that this issue “depends solely on the question whether the ERA-II Reimbursement of $4,616,191 can be deemed part of the net sum available to the borrower ‘for the improvement.’ ” Id.
On that issue, the bankruptcy court concluded that the money expended on the ERA-II reimbursement was not “available to the borrower for the improvement.” See id. at 354. Specifically, the court ruled that because the money spent on the Common Site Work did not fit the statutory definition of the term “cost of improvement,” as set forth in section 2(5) of the Lien Law, NHP-III’s payment to ERA-II, although labeled a “reimbursement,” was actually “part of the purchase price NHP-III paid for the land.” Id. The bankruptcy court then subtracted the ERA-II reimbursement from the aggregate amount made available for the improvement, arriving at a figure of approximately $6.1 million.[4] See id. at 355. Because this amount was about $1 million less than the $7.2 million claimed in the two section 22 affidavits, the bankruptcy court ruled that those affidavits were materially false. See id.
Next, the bankruptcy court concluded that NEBF had knowingly filed a materially false statement when it filed the first section 22 affidavit. See id. at 354. According to the bankruptcy court, NEBF was aware when it filed the statement of both the agreement to make the ERA-II reimbursement and that approximately $4 .6 million of its Section III loan was used to make that reimbursement. See id. In the bankruptcy court’s view, this was sufficient to put NEBF on notice of what it had already determined to be the “material defect” in the initial section 22 affidavit. Id.
Finally, the bankruptcy court ruled that Ritz-Craft’s reliance or non-reliance upon NEBF’s section 22 affidavit was irrelevant to the issue of whether its mechanic’s hen would be deemed superior to NEBF’s pre *120 viously filed mortgage lien. See id. at 355. The bankruptcy court therefore subordinated NEBF’s mortgage lien to Ritz-Craft’s lien. See id. Additionally, after a telephone conference with the parties, the bankruptcy court fixed the value of Ritz-Craft’s mechanic’s lien at $384,251.52, plus interest and costs. Because the court held that Ritz-Craft’s lien was superior to NEBF’s pursuant to Lien Law § 22, the court did not address Ritz-Craft’s equitable subordination argument.
IV. The District Court’s Decision
The district court reversed the bankruptcy court’s judgment and held that NEBF rightfully included the ERA-II reimbursement as part of “the net sum available to the borrower for the improvement” under section 22. See Ritz-Craft II, 241 B.R. at 326-27. For the district court, this case presented the same issue identified by the bankruptcy court: whether the approximately $4.6 million ERA-II reimbursement should be viewed as pari of the “net sum available to the borrower for the improvement” under section 22. See id. The district court’s determination on that issue was informed by its reading of Lien Law § 2(4), which defines the term “improvement” for lien law purposes. See id. at 327. Section 2(4) defines “improvement” to include “the demolition, erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property or materials furnished for its permanent improvement.” N.Y. Lien Law § 2(4). Noting that the Common Site Work — which the ERA-II reimbursement paid for — included “the grading of the site and the building of such amenities as roads, sewer connections, stormwater management [systems and] utilities,” the court found that the reimbursement “f[e]ll within” section 2(4)’s definition. Ritz-Craft II, 241 B.R. at 327. Accordingly, the court held that the approximately $4.6 million reimbursement was correctly included as part of the funds available for the improvement in the section 22 affidavit. See id. at 330.
The bankruptcy court’s decision, on the other hand, rested in large part on its view that Lien Law § 2(5), which defines “[c]ost of improvement,” was the proper source of guidance for determining what constitutes “the net sum available to the borrower for the improvement” under section 22. See Ritz-Craft I, 234 B.R. at 353-54. The district court found the bankruptcy court’s reliance on section 2(5) to be misplaced. Because “[sjection 22 quite explicitly uses the term ‘improvement,’ not ‘cost of improvement,’ ” the court stated that “whether the building loan contract complies with [sjection 2.5 is irrelevant to the relative priority of Ritz-Craft’s and NEBF’s loans.” See Ritz-Craft II, 241 B.R. at 328. With respect to Ritz-Craft’s claim of equitable subordination, the district court held that the statutory remedy of section 22 was the only basis upon which subordination could be obtained, and therefore that the doctrine of equitable subordination was inapplicable to Ritz-Craft’s case.[5] See id. at 330. This appeal followed the entry of the district court’s judgment reversing the judgment of the bankruptcy court.
DISCUSSION
In this diversity action, we must determine whether, under New York’s Lien Law, a borrower’s affidavit that includes in the statement of “the net sum available to the borrower for the improvement” amounts used by the borrower to reimburse another for work that was completed prior to the procurement of the construction loan is rendered materially false by that inclusion. We review the district court’s determination of this state law issue de novo. See Maska U.S., Inc. v. Kansa Gen. Ins. Co., 198 F.3d 74, 78 (2d Cir.1999). In determining the New York law on this issue, we look to the provisions of the Lien Law itself as well as New York *121 case law. See State of New York v. Blank, 27 F.3d 783, 788 (2d Cir.1994). “Where the law of the state is ‘uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the ... state would resolve the uncertainty or ambiguity.’ ” Id. (quoting Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994)) (alteration in original). In so doing, the decisions of the New York Court of Appeals are of the utmost importance to us. See id. “But where there is ‘no decision by [the New York Court of Appeals] then [we] must apply what [we] find to be [New York] law after giving proper regard to relevant rulings of other [New York courts].’ ” Id. (quoting Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)) (internal quotation marks omitted).
On appeal, Ritz-Craft argues that the district court’s ruling that NEBF’s mortgage lien was superior to Ritz-Craft’s mechanic’s lien was in error for two reasons. First, Ritz-Craft contends that allowing borrowers to include amounts used to reimburse contractors and others for work completed prior to the procurement of a construction loan by the borrower is contrary to the legislative intent underlying Lien Law § 22. Alternatively, Ritz-Craft argues that section 22 must be read in tandem with section 2(5), and that the two provisions taken together require that when the proceeds of a construction loan are to be used by a borrower to reimburse another for work completed prior to the construction loan, that work must be specifically outlined in the building loan contract.
I. The Effect of Including Funds Used to Pay Costs Incurred Prior to Procuring a Construction Loan in “the Net Sum Available to the Borrower for the Improvement”
 Section 22 of the New York Lien Law requires that all building loan contracts “contain a true statement under oath, verified by the borrower showing,” inter alia, “the net sum available to the borrower for the improvement.”[6] N.Y. Lien Law § 22. If the statement is not filed, section 22 states that “the interest of each party to [the building loan] contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter.” Id. Thus, the statute’s express terms require that a lender that fails to file an affidavit suffers a loss of priority. In addition, the New York Court of Appeals has held that a lender’s lien may also be subordinated “if [the lender] knowingly files a materially false statement.” Nanuet Nat’l Bank v. Eckerson Terrace, Inc., 47 N.Y.2d 243, 248, 417 N.Y.S.2d 901, 391 N.E.2d 983 (1979). While loss of priority in this circumstance is not compelled by the literal terms of section 22, the Nanuet court based its holding on the legislative intent underlying the provision. On the issue of legislative intent, the court explained that the section 22 affidavit requirement exists “to readily enable a contractor to learn exactly what sum the loan in fact made available to the owner of the real estate for the project.” *122 Id. at 247, 417 N.Y.S.2d 901, 391 N.E.2d 983. “Consistent with this overriding legislative objective,” the court held that a lender’s interest should be “subjeet[ ] ... to the subordination penalty if it knowingly files a materially false statement.” Id. at 248, 417 N.Y.S.2d 901, 391 N.E.2d 983.
Here, Ritz-Craft argues that for the New York legislature’s intent to be completely effectuated, we must find that a section 22 affidavit is materially false when there is included in the statement of sums available to the borrower funds used as reimbursement for work completed prior to the construction loan. Ritz-Craft contends that a holding in favor of NEBF would be contrary to the legislative intent underlying section 22 and the rationale of the New York Court of Appeals in Nanuet because the approximately $4.6 million that went to reimburse ERA-II was not actually available for the NHP-III improvement at the time of NEBF’s loan. Thus, according to Ritz-Craft, a holding in favor of NEBF would leave contractors unjustly misinformed about the exact state of a borrower’s finances available for the improvement in cases in which the borrower used a portion of the construction loan to reimburse another for work completed prior to the construction loan.
But Ritz-Craft’s argument in regard to legislative intent is flawed because there is no demonstration of any legislative purpose to provide more than a generalized notice of the amount available for the improvement. While section 22’s requirement that the affidavit show the net sum available to the borrower for the improvement was certainly enacted to enable contractors to learn how much money the construction loan made available to the borrower for the improvement, the absence of other filing requirements in section 22 means that contractors will rarely be aware of exactly what sums the borrower has on hand at a given time to apply to the improvement. Most notably, section 22 has no updating requirement. That is, borrowers are not required under section 22 or any other provision of the Lien Law to make periodic filings stating what portion of the proceeds of the construction loan remains available to pay future contractors.
Because of the absence of an updating requirement or other detailed filing requirements, it seems that Ritz-Craft has overstated the breadth of section 22. Rather than ensuring that contractors are always kept abreast of the portion of a building loan that is available to a developer, section 22 guarantees only that contractors are able to ascertain what sum the building loan made available to the borrower for the improvement at a particular point in time, namely, when the building loan contract was executed. Accordingly, we reject Ritz^-Craft’s argument that section 22 and the New York Court of Appeals’ decision in Nanuet mandate a finding that no construction loan proceeds used by the borrower to reimburse for work completed prior to the loan can be included in the net sum available to the borrower for the improvement.
In determining if expenditures can properly be included in the monies available “for the improvement” under section 22, our focus must be on the nature of the goods or services for which the expenditures are made, rather than on the time when a borrower incurs a specific obligation to pay. The issue here, then, is whether the goods and services for which ERA-II was reimbursed, the Common Site Work, can properly be considered part of “the improvement” under section 22. Section 2(4) of the Lien Law defines the term “improvement” to include “the demolition, erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property or materials furnished for its permanent improvement.” N.Y. Lien Law § 2(4). In this case, NHP-III reimbursed ERA-II for: (1) basic earthwork that made the terrain at the Nob Hill site suitable for an apartment complex; (2) street widening *123 and the construction of sidewalks and curbs; (3) connecting the site to the municipal water supply; and (4) installing other public utilities. This construction work — fundamental to the development of an apartment complex — appears to fall squarely within section 2(4)’s definition of “improvement.”
Two trial courts that have considered the legal effect of section 22 affidavits that include, in the statement of net sum available, funds used to pay for costs incurred prior to the construction loan have reached the same result as we reach here. In Adirondack Trust Co. v. Thomas J. Bien & Associates, 168 Misc.2d 919, 646 N.Y.S.2d 288 (Sup.Ct.1996), the holder of a mortgage executed in connection with a building loan contract brought a foreclosure action in which it sought a declaration that its lien was superior to subsequently filed mechanics’ liens. See id. at 289. In defense, the mechanics’ lienholders asserted that their liens were entitled to priority because the mortgage lienholder’s section 22 affidavit was materially false. See id. Defendants based their argument on the fact that the affidavit included as part of the $147,707.50 listed as the net sum available to the borrower for the improvement, $75,000 advanced to the borrower prior to the execution of the building loan contract. See id. at 289-90. The court rejected defendants’ argument. The court’s discussion of the section 22 issue, while brief, nonetheless makes clear that the timing of the payments was not important. To the contrary, the court held that “[cjlearly plaintiff made $147,707.50 available to [the borrower] for the construction of a one family residence at 25 Arrowhead Road” because the sum of all the disbursements to the borrower, including those made pri- or to the filing of the affidavit, was equal to that amount. Id. at 290. Accordingly, the court held that section 22 was not violated. See id.
In its Reply Brief, Ritz-Craft seeks to distinguish Adirondack Trust from the instant case because the lender in that case filed a Notice of Lending pursuant to Lien Law § 73. Additionally, Ritz-Craft’s Reply Brief implies that the plaintiffs filing of a Notice of Lending was central to the Adirondack Trust holding. See Ritz-Craft’s Reply Br. at 11 (noting that “the [c]ourt referred to [the filing of a Notice of Lending] in stating the basis for its decision”). Ritz-Craft’s reading of Adirondack Trust' evinces a misunderstanding of the court’s holding. While the court’s summary of the facts did observe that the plaintiff filed a Notice of Lending, see Adirondack Trust, 645 N.Y.S.2d at 288-89, the court did not mention the Notice of Lending in its analysis of the section 22 issue. Rather, the court’s holding on the section 22 issue was based on the fact that the total sums disbursed to the borrower equaled the amount listed in the section 22 affidavit as available to the borrower for the improvement. See id. at 290. We therefore do not agree with Ritz-Craft’s reading of Adirondack Trust.
As to Ritz-Craft’s argument that its lien is superior to NEBF’s because NEBF failed to file a Notice of Lending pursuant to section 73 of the Lien Law, this argument was not raised either in the bankruptcy court or the district court proceedings in this case. In accordance with the well-established general rale that we will not consider an issue raised for the first time on appeal, see Singleton v. Wulff, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), we decline to consider Ritz-Craft’s Notice of Lending argument. In reaching this result, we note that neither of the exceptions to the general rule are applicable here. This is not a case in which disregard of the general rule is necessary to remedy “manifest injustice,” see Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir.1990), or one in which the argument on appeal is merely “more precise or slightly different” from arguments below, see United States v. International Bhd. of Teamsters, 12 F.3d 360, 366 (2d Cir.1993).
*124 Additionally, even if Ritz-Craft's Notice of Lending argument was properly before us, the result of this case would be unchanged because we find that argument to be without merit. Section 73-like all other provisions of Article 3-A of the Lien Law-applies to owners, contractors, and subcontractors that receive funds to be used in connection with an improvement to property. See N.Y. Lien Law §~ 70-79a. Article 3-A also applies to those to whom construction loan funds have been transferred. Because NEBF is a lender, and not a property owner, contractor, subcontractor, or transferee, we find that section 73 and Article 3-A of the Lien Law are inapposite to the instant case. See, e.g., ALB Contracting Co. v. York Jersey Mortgage Co., 60 A.D.2d 989, 401 N.Y.S.2d 934, 934 (App.Div.1978) (holding that "[a] lender is not a statutory trustee" under the Lien Law).
The court in United States v. Eljos Associates, No. 84 Civ. 1952, 1986 WL 10467 (S.D.N.Y. Sept.17, 1986), reached a result similar to the result reached by the court in Adirondack Trust. In Eljos, the court held that a section 22 affidavit was not false at the time it was filed despite the fact that it included in the statement of net sum available to the borrower for the improvement $387,041.60 used by the borrower for costs incurred prior to the filing of the affidavit. See id. at *4-*5. The payments at issue were for a contractor’s requisition, payment and performance bond fees, and an architect’s fee. See id. at *3. For the Eljos court, the amount of these payments was properly included in the net sum available to the borrower for the improvement because they were not “used to satisfy liens unconnected with the improvements called for in the building loan contract. Rather, ... [t]he $390,000 requisitioned by [the contractor] ... was available for improvements under the loan just as truly as the funds requisitioned after the statement was filed.” Id. at *4.
The Adirondack Trust and Eljos courts applied the express terms of section 22 and found that the provision does not mandate subordination where the affidavit includes amounts to be used by the borrower to pay for obligations incurred prior to obtaining the construction loan in the statement of the amount available to the borrower for the improvement. This literal approach to section 22 appears to be the only reasonable one. The statute requires that lenders and borrowers file one affidavit that sets forth “the net sum available to the borrower for the improvement” under the loan. Thus, nothing in its express terms indicates that the statute is concerned with when the borrower incurs the payment obligations that the loan will be used to pay. The statute is focused on what portion of the loan will be “available to the borrower for the improvement,” but not on the timing of a borrower’s contract for each item of work in the improvement.
It is undisputed that a borrower’s statement that overstates the amount available from the proceeds of the loan for improvement of the property is materially false. The most common circumstances in which courts have found such overstatement to exist are when borrowers use the proceeds of a loan either to satisfy previous mortgages on the property or to pay expenses attendant to obtaining the loan itself and fail to exclude those amounts from the net sum available for the improvement in the section 22 affidavit. See Nanuet, 47 N.Y.2d at 246, 417 N.Y.S.2d 901, 391 N.E.2d 983 (abrogating the appellate division’s decision in Ulster Sav. Bank v. Total Communities, Inc., 55 A.D.2d 278, 390 N.Y.S.2d 252, 253 (App.Div.1976)); HNC Realty Co. v. Golan Heights Developers, Inc., 79 Misc.2d 696, 360 N.Y.S.2d 954, 956-57 (Sup.Ct.1974). Here, however, there has been no such misstatement. Rather, NEBF included amounts to be used by NHP-III to pay for previously completed structural work in the amount listed as available to the borrower for the improvement in the section 22 affidavit. We hold that including these amounts was *125 proper and that NEBF’s section 22 affidavit was not materially false.
II. Ritz-Craft’s Section 2(5) Argument
Ritz-Craft also contends that section 2(5) of the Lien Law, which defines the term “cost of improvement,” when read together with section 22, required NEBF and NHP-III to list the ERA-II reimbursement in their building loan contract. Ritz-Craft argues further that because the reimbursement was not listed in the building loan contract, NEBF’s lien should be subordinated to its own. For the reasons that follow, we reject this argument.
Section 2(5) includes in its definition of “cost of improvement” many of the sundry expenses that may be incurred by a developer. See N.Y. Lien Law § 2(5). Section 2(5) goes on to state that if one of the listed expenses is incurred “prior to the date of the initial advance received under the building loan mortgage,” it will nonetheless be deemed an expenditure within the “cost of improvement” so long as the expenditure is itemized in the building loan contract. Id. Section 2(5)’s definition of “cost of improvement” is significant because it defines the manner in which owners, general contractors, and subcontractors who are trustees under Article 3-A of the Lien Law can spend the proceeds of a construction loan. Article 3-A of the Lien Law creates a fiduciary relationship between certain recipients of construction loan proceeds and the contractors and subcontractors who are or will be employed in a construction project. In that fiduciary relationship, the obligation of an owner trustee is to “h[o]ld and app[ly] [the trust assets] for payment of the cost of improvement.” Id. § 71(1). In the event that an owner trustee uses the trust assets for any expenses other than those comprising the “cost of improvement,” the beneficiaries under Article 3-A — the contractors employed in the improvement — can bring an action against the owner trustee for “diversion” of trust assets. See id. § 72.
Here, Ritz-Craft’s reliance on section 2(5) is misplaced. NEBF, as a lender, is not constrained by section 2(5) or Article 3-A because “[a] lender is not a statutory trustee” under the Lien Law. ALB Contracting Co., 401 N.Y.S.2d at 934. Indeed, under Article 3-A, “[n]o one other than an owner, contractor or subcontractor is designated as a ... trustee.” Utica Sheet Metal Corp. v. J.E. Schecter Corp., 47 Misc.2d 290, 262 N.Y.S.2d 583, 587 (Sup.Ct.1965). Thus, while NHP-III may have been required to list the ERA-II reimbursement in the building loan contract for the reimbursement to be deemed part of the “cost of improvement,” whether the reimbursement falls within section 2(5)’s definition is of no relevance to the case at bar. Section 22 uses the term “improvement,” not “cost of improvement.” And it is section 22, not section 2(5) or Article 3-A, that subjects lenders to the subordination penalty that Ritz-Craft asks us to impose here. Further support for our conclusion is found in Lien Law § 13(3), which expressly provides that a mortgagee is not obligated “to see to the proper application of ... advances by the owner,” and further, that so long as the building loan contract contains the trust covenant required by section 13(3) and complies with section 22 (as did the contract at issue here), “nothing in this section, nor in that portion of section two ... defining ‘cost of improvement’ shall be deemed to impair or subordinate the lien of any mortgage.” N.Y. Lien Law § 13(3). Accordingly, we reject Ritz-Craft’s argument that section 2(5) required NEBF to list the ERA-II reimbursement in its building loan contract with NHP-III at the risk of subordination of its lien if it failed to do so.
CONCLUSION
In accordance with the foregoing, the judgment of the district court is affirmed.

. Under the building loan contract, the amount that NEBF would actually loan to NHP-III depended upon the amounts specified in periodic requests by NHP-III, but in no circumstance could the total sum loaned surpass $12,080,000.

. Section 13 provides, in relevant part, as follows:
Every such building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement and before the expiration of the period specified in section ten of this chapter for filing of notice of lien after the completion of the improvement shall contain a covenant by the mortgagor that he will receive the advances secured thereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement ... before using any part of the total of the same for any other purpose....
N.Y. Lien Law § 13(3) (McKinney 2000).

. Ritz-Craft argued that this misidentification violated section 22’s requirement that the affidavit be “verified by the borrower.’’ N.Y. Lien Law § 22.

. The bankruptcy court arrived at this figure by subtracting the $4,616,191 ERA-II reimbursement from $10,726,344, the amount that NEBF and NHP-III claimed was actually disbursed under the loan. See id. at 355, 262 N.Y.S.2d 583.

. Ritz-Craft does not raise the claim of equitable subordination on this appeal.

. Section 22 states, in relevant part, as follows:
A building loan contract either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and must contain a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement, and, on or before the date of recording the building loan mortgage made pursuant thereto, to be filed in the office of the clerk of the county in which any part of the land is situated.... If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter.
N.Y. Lien Law § 22.